[Civ. No. 41362. Second Dist., Div. Four. Jan. 30, 1974.]

JORDAN PACKER, Plaintiff and Appellant, v.
BOARD OF MEDICAL EXAMINERS, Defendant and Respondent.

**COUNSEL**

Cutler & Cutler and Richard B. Cutler for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, and Henry Lewin, Deputy Attorney General, for Defendant and Respondent.

**OPINION**

**DUNN, J.**—This is an appeal from a judgment denying a peremptory writ of mandate which would have commanded respondent Board of Medical Examiners to set aside its decision revoking the license of appellant Jordan Packer to practice psychology.

On April 28, 1972, Packer filed a verified petition for writ of mandate in the superior court. (Code Civ. Proc., § 1094.5.) The petition alleged: Packer's license to act as a psychologist was issued by the Psychology Examining Committee of the Board of Medical Examiners; in 1970 the board, acting through the committee, filed an accusation and an amended accusation against Packer seeking the revocation or suspension of his license on the ground that Packer had violated Business and Professions

Code section 2960 and a rule of professional conduct promulgated by the committee (Cal. Admin. Code, tit. 16, ch. 13.1, § 1397.5) in that, since February 1, 1965, he had misrepresented his professional qualifications by holding himself out as possessing the earned degree of doctor of philosophy when he knew that he had not earned such degree by appropriate and sufficient study; the accusation further charged that Packer was not qualified by experience or education to possess a doctor's degree, and if such a degree was issued to him, it was obtained by means of a fraudulent transcript indicating a course of study not actually taken and completed by Packer, but necessary to obtain the degree.

The petition further alleged: a hearing on the accusation was held before a hearing officer of the Office of Administrative Procedure (the record shows that Packer appeared and was represented by counsel); on January 15, 1971, the hearing officer filed with the committee a proposed decision recommending that the accusation be dismissed; the committee did not adopt the proposed decision, electing, instead, to decide the case upon the record of the proceeding before the hearing officer; by notice dated May 12, 1971, the parties were so informed and they were further advised that each could present written argument to the committee; however, as no opening brief was filed on behalf of the board,[1] Packer was "effectively denied" the opportunity to present argument to the committee.

It was further alleged: on March 17, 1972, the committee issued its proposed decision containing findings of fact, determination of issues and an order revoking Packer's license to act as a psychologist on the specific ground that Packer had violated California Administrative Code section 1397.5; execution of the order was stayed and Packer placed on probation for five years upon certain conditions; on April 3, 1972, the board adopted the proposed decision, to become effective May 3, 1972.

The petition also alleged: the decision was not sustained by the evidence, and was in excess of the board's authority. The petition sought alternative and peremptory writs of mandate commanding the board to set aside its decision and restore Packer's license, as well as an order staying operation of the decision pending entry of judgment on the petition.

An alternative writ and a stay order were issued. The board made a return by way of answer to the petition, and the matter was heard. The transcript of the administrative proceeding was received in evidence.

---

[1]The notice stated in part: "The opening brief of the Attorney General will be due 30 days from the receipt of this notice. The respondent will be allowed 30 days in which to reply, and the Attorney General allowed 10 days for a closing brief."

Viewed in the light most favorable to the judgment (see *Small* v. *Smith* (1971) 16 Cal.App.3d 450, 455 [94 Cal.Rptr. 136]), such evidence showed: in August 1960 Packer was awarded a master of arts degree in psychology; in 1964 Packer and others formed the Institute for Social and Psychological Research, a nonprofit educational corporation authorized to grant academic degrees (Ed. Code, § 29007, subd. (a)(3)); Packer was the chairman of its board of directors and also president; the Institute required that persons admitted to its doctoral program with a master's degree complete an additional 36 units of study for the issuance of a doctor of philosophy degree; in August 1964 Packer was admitted to the doctoral program; the records of the Institute showed that from September 1964 to September 1965 Packer completed courses totaling 45 units.[2] However, the instructor indicated as having taught the courses representing 21 of these units denied ever having taught such courses. Packer had falsified his class attendance cards for these courses by obtaining the instructor's signature on blank cards, and then filling them in. Another instructor of a three-unit course purportedly completed by Packer testified that Packer was not one of the five students in that course; the instructor identified his signature on Packer's class attendance card for the course, but denied having signed the card for Packer.

The evidence further showed: on September 27, 1965, the Institute granted Packer the degree of doctor of philosophy in psychology, and he was so notified by letter dated October 4, 1965; beginning in 1963 or early 1964, and before he was notified of the conferring of the degree, Packer called himself "Dr. Packer"; from January 1965 to May 1968 he was generally referred to by that title; sometime prior to December 1964, Packer passed the junior psychology examination given by the committee; accordingly, on December 14, 1964, the committee informed him that he was eligible to take the examination for certification as a psychologist; from June 1965 to July 1967, Packer took the examination several times, finally passing the written portion but failing the oral portion; on June 28, 1966, the Institute sent the committee a letter stating that Packer had been awarded a doctor's degree, and requesting that the committee change its records to reflect that fact; enclosed with the letter was a copy of the transcript of Packer's academic record showing completion of 45 units of study and issuance of the degree; in 1967, the law governing the licensing

---

[2]Packer testified that a student holding a master's degree was required to complete 36 units of additional study for the award of a doctor's degree. The transcript of Packer's record at the Institute indicates that he completed 45 units (9 more than required for a doctorate). Other evidence showed that 24 of these units represented courses not actually taken by Packer, with the result that he did not complete sufficient units for the award of a doctorate under either a 36- or a 45-unit requirement.

of psychologists was amended and on May 15, 1968, Packer was licensed as a psychologist.

Findings of fact and conclusions of law were signed by the trial court and filed. The court found that the following pertinent findings of fact made by the committee, and adopted by the board, were supported by the weight of the evidence: in 1963-1964 Packer and others formed the Institute for Social and Psychological Research; in 1964 the Institute began operating as an educational institution, and was authorized to issue academic degrees in the field of psychology; early in 1965 Packer held himself out as a doctor of philosophy when he did not possess an earned or honorary doctor's degree; on October 4, 1965, the Institute awarded Packer a doctor's degree "to be effective as of September 27, 1965"; Packer also represented himself as a doctor after this time, but did not hold an earned or honorary doctor's degree because he did not take several courses which the records of the Institute indicate that he completed; Packer engaged in unethical conduct by creating an academic background and credit for courses which he never completed; Packer was issued a psychologist's license by the Psychology Examining Committee sometime after October 29, 1967; Packer knew he had not completed the requirements for the degree which he submitted in partial fulfillment of the requirements for licensure as a psychologist; he did not, and does not now, meet the usual academic qualifications for his doctorate. Packer fraudulently represented his educational qualifications to the committee in the application filed February 7, 1968.

As conclusions of law, the court determined: the proposed decision of the committee, as adopted by the board, was not harsh, arbitrary or unreasonable; the committee and the board properly inquired into the substantive course material in support of Packer's claimed doctorate in order to determine whether he was misrepresenting his professional qualifications; the board did not deprive Packer of the opportunity to submit written argument to the committee before it rendered its proposed decision.

Judgment was entered discharging the alternative writ of mandate and denying the peremptory writ. Packer appeals from the judgment.[3]

Appellant contends the evidence does not support the findings. ■ As required in an administrative mandamus proceeding of this type, the trial court exercised its independent judgment in reweighing the evidence. (*Yakov* v. *Board of Medical Examiners* (1968) 68 Cal.2d 67, 69 [64 Cal. Rptr. 785, 435 P.2d 553]; *Magit* v. *Board of Medical Examiners* (1961)

---

[3]The Court of Appeal issued a writ of supersedeas staying the judgment pending determination of the appeal. (Code Civ. Proc., § 1094.5, subd. (f).)

57 Cal.2d 74, 80 [17 Cal.Rptr. 488, 366 P.2d 816].) Our review is limited to determining if the evidence supports the trial court's findings. (*Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 915 [80 Cal. Rptr. 89, 458 P.2d 33]; *Yakov* v. *Board of Medical Examiners, supra*, 68 Cal.2d at p. 69; *Collins* v. *Board of Medical Examiners* (1972) 29 Cal. App.3d 439, 444 [105 Cal.Rptr. 634].) In making that determination, we are bound by the usual standards of appellate review. (*Sunseri* v. *Board of Medical Examiners* (1964) 224 Cal.App.2d 309, 313 [36 Cal.Rptr. 553].) Hence, all conflicts in the evidence must be resolved in favor of the respondent, and all legitimate and reasonable inferences drawn to uphold the court's findings. (*Moran* v. *Board of Medical Examiners* (1948) 32 Cal.2d 301, 308-309 [196 P.2d 20]; *Lacy* v. *California Unemployment Ins. Appeals Bd.* (1971) 17 Cal.App.3d 1128, 1134 [95 Cal.Rptr. 566].) In view of these principles, it is apparent that the findings are supported by substantial evidence. Appellant, in effect, asks that we reweigh the evidence and consider the credibility of witnesses. This we cannot do. (*Overton* v. *Vita-Food Corp.* (1949) 94 Cal.App.2d 367, 370 [210 P.2d 757].)

■ Appellant further contends he was deprived of a "fair trial" at the administrative level (Code Civ. Proc., § 1094.5, subd. (b)) because he was denied the opportunity to present argument to the committee before it rendered the decision revoking his license. If an administrative agency does not adopt the proposed decision of a hearing officer, the agency, before it can render a contrary decision, must afford the parties an opportunity for argument. (Gov. Code, § 11517, subd. (c); *Yanke* v. *State Dept. Public Health* (1958) 162 Cal.App.2d 600, 603 [328 P.2d 556].) In its notice to appellant of nonadoption of the hearing officer's proposed decision, respondent stated: "You are hereby afforded the opportunity to present written argument to the Psychology Examining Committee if you desire to do so by filing such written argument with the Committee at its office . . . and the same opportunity is afforded to the Attorney General . . . . The opening brief of the Attorney General will be due 30 days from the receipt of this notice. [You] will be allowed 30 days in which to reply . . . ." Neither party presented written argument to the committee. Appellant contends that, without an opening brief from the Attorney General, appellant did not know which of the hearing officer's findings were rejected by respondent, and he thus effectively was deprived of the opportunity to present argument. The contention is unsupported by the record. Moreover, if appellant was concerned about any lack of information necessary to present his argument, he could have contacted the Attorney General or the committee. Apparently he did neither, but was content to allow the committee to render a decision without benefit of argument. Having been given an express invitation to present written argument, appellant is not in posi-

tion now to claim denial of a fair trial by reason of his own deliberate failure to act.

█ Appellant next contends that respondent did not have authority to challenge the validity of his degree because it was granted by an educational institution authorized by law to issue academic degrees. The contention is without merit.

The purpose of the Psychology Licensing Law (Bus. & Prof. Code, §§ 2900-2996.6), as declared by the Legislature, is "to protect the public from the unauthorized and unqualified practice of psychology." (Bus. & Prof. Code, § 2900.) Accordingly, respondent (acting through the committee) is empowered by the Legislature to adopt rules of professional conduct "appropriate to the establishment and maintenance of a high standard of integrity and dignity in the profession," and "[e]very person who holds a license to practice psychology in this state shall be governed and controlled by the rules of professional conduct adopted by the committee." (Bus. & Prof. Code, § 2936.) One such rule is that "The psychologist shall not misrepresent nor permit the misrepresentation of his professional qualifications . . . ." (Cal. Admin. Code, tit. 16, ch. 13.1, § 1397.5.) If a licensed psychologist violates this rule, respondent may suspend or revoke his license. (Bus. & Prof. Code, § 2960, subd. (h).) When possession of a doctor's degree is one of the qualifications necessary for licensure as a psychologist, such requirement presupposes not merely that the degree has been issued by an educational institution authorized to do so, but also that the degree has been earned by completion of a prescribed course of study. If it has not, the licensee misrepresents his professional qualifications.

█ This brings us to the question whether possession of a doctorate degree was a requirement for the granting of appellant's license. If there was no such requirement, the fact that appellant held himself out as possessing a doctor's degree would not constitute a material misrepresentation of his professional qualifications.

Under former Business and Professions Code section 2941, subdivision (4), an applicant for certification as a psychologist was required to hold a doctorate degree in psychology, or have had equivalent training. However, under former section 2941.5, such requirement was waived if the applicant passed a junior examination.[4] The evidence showed, without

---

[4]Former section 2941.5 provided in part: "The committee shall give and any applicant may take a junior examination . . . . In the event the applicant shall pass such examination, the committee shall waive subdivision 4 of Section 2941. . . ." Section 2941.5 by its own terms expired on October 1, 1965. However, appellant took and passed the junior examination prior to that date.

contradiction, that appellant passed such an examination sometime in 1964, and thereby became eligible to take the examination for certification as a psychologist. From June 1965 to July 1967 appellant took the examination several times, but failed to pass the oral portion. In 1967, the former Psychology Certification Act (including §§ 2941 and 2941.5) was repealed by the Psychology Licensing Law. (Stats. 1967, ch. 1677, §§ 1 and 2, effective Nov. 8, 1967.) The new licensing law requires that every applicant for a license possess an earned doctorate degree in psychology, or a doctorate degree deemed equivalent by the committee. (Bus. & Prof. Code, § 2914, subd. (c).) This requirement is statutorily considered to have been met by any person who, as of November 8, 1967, had successfully qualified to take the examination for certification as a psychologist under the former law. (Bus. & Prof. Code, § 2915.) Since appellant had qualified before December 1964 to take such examination, he was not required to hold a doctorate degree in order to be licensed as a psychologist. It follows that, even though appellant misrepresented himself as possessing an earned degree, such misrepresentation did not relate to his professional qualifications, and thus was not ground for the revocation of his license. Generally, misrepresentation of only a "material fact" is actionable. (Cf. *Employers' L. A. Corp.* v. *Indus. Acc. Com.* (1918) 177 Cal. 771, 776 [17 P. 935]; *Handley* v. *Handley* (1960) 179 Cal.App.2d 742, 746 [3 Cal.Rptr. 910]; *Hill* v. *Wrather* (1958) 158 Cal.App.2d 818, 824 [323 P.2d 567].)

The committee concluded that Packer had violated one of its rules (Cal. Admin. Code, § 1397.5) by misrepresenting his professional qualifications. Since we have concluded his professional qualification (as a Ph.D.) was irrelevant, it follows his misrepresentation of an irrelevant fact does not constitute a ground for discipline.

However, Business and Professions Code section 2960 (as it read prior to repeal and the new enactment in 1967) read in part that use of "fraud or deception in applying for a certificate. . . ." is a ground for discipline. We hold that fraudulently deceptive conduct, even though relating to an irrelevant misrepresentation, can be a matter of professional concern, touching as it does, upon professional integrity and moral standards. Thus, Business and Professions Code section 2936 (effective before the board hearing occurred) stated legislative policy to be the "maintenance of a high standard of integrity. . . ." and the rule adopted by the board (Cal. Admin. Code, § 1397.5) denigrated the misrepresentation of "professional qualifications." We conclude that professional qualifications encompass honesty and integrity. The committee found that Packer acted fraudulently. Even though the educational qualifications he fraudulently misrepresented were irrelevant, nevertheless, he exhibited an attitude, or frame of mind, not demon-

strating the high standard of integrity required and this supports the committee's finding that he was punishable under California Administrative Code section 1397.5.

The judgment is affirmed.

Jefferson, Acting P. J., and Kingsley, J., concurred.

A petition for a rehearing was denied February 19, 1974, and appellant's petition for a hearing by the Supreme Court was denied March 27, 1974.