[Civ. No. 46106. Second Dist., Div. Two. Oct. 14, 1975.]

JORDAN PACKER, Plaintiff and Appellant, v.
BOARD OF BEHAVIORAL SCIENCE
EXAMINERS, Defendant and Respondent.

**COUNSEL**

Cutler & Cutler and Richard B. Cutler for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, and Mark A. Levin, Deputy Attorney General, for Defendant and Respondent.

## OPINION

**FLEMING, J.**—Jordan Packer appeals the denial of his petition to mandate the State Board of Behavioral Science Examiners to restore his marriage, family, and child counseling license. (Bus. & Prof. Code, § 17800 et seq.)

Effective 23 November 1970 the Legislature broadened the board's regulation of marriage, family, and child counseling and stiffened licensing requirements. (Stats. 1970, ch. 1310.) On 19 November 1970 Packer, a licensed psychologist,[1] applied to the board for a marriage, family, and child counseling license. Qualifications for a license then included two years' supervised counseling experience and a master's degree in a behavioral science from an accredited school. (Former Bus. & Prof. Code, § 17804.)

Packer's application listed his qualifications as four years' counseling experience, a bachelor's degree in psychology from a state college, a course of study in a psychology master's degree program at a state college, a master's degree in psychology from the California Institute of Psychology, and a doctorate in psychology from the Institute for Social and Psychological Research. Since the two latter institutes were unaccredited schools, Packer's degrees did not qualify him for licensing as a marriage, family, and child counselor. Nevertheless, the board issued Packer a license.[2]

---

[1] See *Packer v. Board of Medical Examiners*, 37 Cal.App.3d 63 [112 Cal.Rptr. 76].

[2] Packer's application set out his educational qualifications in the following manner:

**5. EDUCATION:**

| | NAME OF COLLEGES, UNIVERSITIES, SCHOOLS | LOCATION | · COURSE OF STUDY | DEGREE | DATE |
|---|---|---|---|---|---|
| UNDER-GRADUATE | L. A. City College | 855 N. Vermont L. A. Calif. | Associate Arts. Psychology | AA | 1/2, ·· |
| | L. A. State College | L. A. Calif. | Psychology Bachelor Arts | B.A. | 1/31/5E |
| QUALIFYING GRADUATE | Los Angeles State College | Los Angeles | Psychology Masters Degree | * / | 1/58– 1/61– |
| | Calif. Inst. of Psychology | Los Angeles | Psychology | M.A. | 8/60 |

*Please attach a photostatic or certified copy of the transcript verifying your degree*

| | | | | | |
|---|---|---|---|---|---|
| OTHER GRADUATE | Inst. for Social & Psychological Research | Los Angeles | Psychology | Ph.D. | 1965 |
| | Status of degree in dispute at present time | | | | |

In the form presented the application was obviously easy to misread. At the administrative hearing Packer testified he had been told the two institutions from which he had received advanced degrees were unaccredited. At least one of the institutions has since gone out of existence.

In May 1973 the board revoked Packer's license because of its administrative error in issuing a license to an unqualified applicant. On Packer's petition for writ of mandate, the superior court found the board's decision supported by the weight of the evidence and authorized by law. The court concluded that Packer had not qualified for a license, that the board had authority to rectify its error, and that neither equitable nor constitutional principles prevented it from exercising that authority.

■ Packer contends he was qualified for a counseling license. He relies on a reciprocity provision, Business and Professions Code section 17809: "The board may issue a license to any person who, at the time of application, holds a valid license issued by a board of marriage counselor examiners or corresponding authority of any state, provided, in its opinion the requirements for such licensure are substantially the equivalent of the requirements of this chapter, and upon payment of the fees specified."

Packer argues that the requirements for his California psychologist's license were substantially equivalent to the requirements for a counseling license and that this license had been issued by a "corresponding authority of any state."

Packer misinterprets section 17809. The phrase "corresponding authority of any state," read in context, plainly refers to an authority in another state which, whatever its title, would be equivalent to a board of marriage counselor examiners in this state. The Board of Medical Examiners, which issued Packer's psychology license (see Bus. & Prof. Code, § 2900 et seq.), is not located in another state and is not equivalent to a board of marriage counselor examiners. The practice of a psychologist may include some services rendered by a marriage, family, and child counselor,[3] but it does not follow that every psychologist is a specialist in marriage, family, and child counseling and entitled to claim that title. In creating separate boards and establishing different licensing requirements the Legislature intended that each license, whether psychologist or counselor, should issue only in compliance with special qualifications set out for that license.

[3]Business and Professions Code section 2903 provides in part: "The practice of psychology is defined as rendering or offering to render for a fee to individuals, groups, organizations or the public any psychological service involving the application of psychological principles, methods, and procedures of understanding, predicting, and influencing behavior, such as the principles pertaining to learning, perception, motivation, emotions, and interpersonal relationships; and the methods and procedures of interviewing, counseling, psychotherapy, behavior modification, and hypnosis; and of

■ Packer argues the court should imply a "grandfather clause" in the statutory plan of counseling licensure, so as to permit a psychologist who practiced marriage, family, and child counseling before 1970 to obtain a counseling license without meeting the subsequent stiffened legislative requirements. The grandfather clause Packer seeks, however, would give him more than he ever had. Under pre-1970 law Packer could counsel as part of his psychology practice (see fn. 2), but he could not advertise himself as a licensed marriage, family, and child counselor. The 1970 act specifically did not limit Packer's right to continue counseling as a psychologist. (Bus. & Prof. Code, § 17800.1.) Under a 1975 amendment, Packer's psychologist license will permit him to advertise that he *practices* marriage, child, and family counseling but not that he is so licensed. (Bus. & Prof. Code, § 17800; Stats. 1975, ch. 198.) But Packer's claimed grandfather clause would permit him to advertise that he holds a marriage, family, and child counseling *license.* Implication of such a clause would loosen rather than tighten state supervision over counseling and move in a direction contrary to the legislative intent to achieve closer control over counseling practice. For example, the new legislation requires not only counseling experience but also written or oral examination and, after 1 September 1975, a master's degree in marriage, family, and child counseling or an equivalent field. (Bus. & Prof. Code, §§ 17804, 17805.) The public should be permitted to identify a counselor specially trained in marriage, family, and child counseling.

■ Packer also argues we should presume the board accepted his credentials as qualifications for a license. The evidence is to the contrary

constructing, administering, and interpreting tests of mental abilities, aptitudes, interests, attitudes, personality characteristics, emotions, and motivations.

"The application of such principles and methods includes, but is not restricted to: diagnosis, prevention, treatment, and amelioration of psychological problems and emotional and mental disorders of individuals and groups.

"Psychotherapy within the meaning of this chapter means the use of psychological methods in a professional relationship to assist a person or persons to acquire greater human effectiveness or to modify feelings, conditions, attitudes and behavior which are emotionally, intellectually, or socially ineffectual or maladjustive."

Business and Professions Code section 17800.2 provides: "For the purposes of this chapter, the practice of marriage, family and child counseling shall mean that service performed with individuals, couples, or groups wherein interpersonal relationships between spouses or members of a family are examined for the purpose of achieving more adequate, satisfying, and productive marriage and family adjustments. Such practice includes premarriage counseling.

"The application of marriage, family and child counseling principles and methods includes, but is not limited to, the use of applied psychotherapeutic techniques, to enable individuals to mature and grow within marriage and the family, and the provision of explanations and interpretations of the psychosexual and psychosocial aspects of relationships within a marriage and family."

and defeats this presumption, for the board's executive secretary testified the license was issued solely by error and Packer did not qualify for a license.

■ Packer next contends the board should be estopped to revoke his license. But estoppel requires detrimental reliance (*Driscoll* v. *City of Los Angeles,* 67 Cal.2d 297, 305 [61 Cal.Rptr. 661, 431 P.2d 245]), and Packer has shown none. He will continue to enjoy all benefits to which he is entitled under the statutes, and he may continue his psychology practice and counseling incident to that practice. Furthermore, estoppel does not ordinarily affect government action for the public welfare. (*City of Long Beach* v. *Mansell,* 3 Cal.3d 462, 493 [91 Cal.Rptr. 23, 476 P.2d 423].) The board regulates the practice of marriage, family, and child counseling in order to further the public welfare, and a denial of the power to revoke a license erroneously issued to an unqualified applicant would preclude the board from correcting its own mistakes, to the ultimate detriment of the public welfare.

■ Packer's final contention attacks the validity of accreditation in the field of marriage, family, and child counseling. Qualifications for a counseling license include a master's degree "obtained from a college or university accredited by the Western College Association, the Northwest Association of Secondary and Higher Schools, or an essentially equivalent accrediting agency as determined by the [B]oard [of Behavioral Science Examiners]." (Bus. & Prof. Code, § 17804.) Packer argues this clause condones an impermissible delegation of a legislative function, viz. the determination of an applicant's qualifications, to a nongovernmental association. He would require the Legislature to draw comprehensive regulations for determination of the adequacy of each applicant's preparatory education.

"It is well settled that the legislature in demanding some standard of efficiency for those applying for license to practice a profession may in its judgment require applicants to be graduates of a school, the standards of which shall be in no particular less than those prescribed by an association or board of national significance." (*Beard* v. *State Bd. of E. & F. Directors,* 111 Cal.App. 559, 561 [295 P. 1052].)[4] *Ex Parte Gerino,* 143 Cal. 412, 419 [77 P. 166], explains this rule in the context of the healing arts: "Evidently the standard of proficiency in scholarship as a prepara-

---

[4]Packer failed to allege and made out no case for the proposition that California Institute for Psychology or the Institute for Social and Psychological Research met the standards for accreditation of any of the approved agencies.

tion, and the particular studies necessary to secure a fair preparation, must change as the discoveries in natural science open new fields of investigation and suggest or reveal new curative agencies. The legislature cannot successfully prescribe in advance a standard to meet these new and changing conditions . . . . The law is as fixed, definite, and certain in this respect as the nature of the subject and the object to be attained will permit, and we do not think it should be held void because it adopts the standard fixed from time to time by those who, it will be presumed, are the most eminent in the profession which it attempts to regulate, and who should be the most interested in maintaining the highest degree of professional proficiency, skill, and training." (See also, *Ex Parte Whitley,* 144 Cal. 167, 180-181 [77 P. 879].)

The private accrediting agencies encourage sound educational development and provide an ongoing review of the qualifications of educational institutions in a manner which could not be duplicated with reasonable expense by the state. (*People* v. *Barksdale,* 8 Cal.3d 320, 336-338 [105 Cal.Rptr. 1, 503 P.2d 257].) Private expertise is particularly useful where, as here, state involvement in the complicated matters of licensing and regulation of an entire field of endeavor is new and uncharted.

The courts thus have approved legislative adoption of the educational and quality standards of private agencies in many professions and areas of public concern: *Arwine* v. *Board of Med. Examiners,* 151 Cal. 499, 503 [91 P. 319] (medicine); *Beard* v. *State Bd. of E. & F. Directors,* 111 Cal.App. 559, 561 [295 P. 1052] (embalming); *Rosenthal* v. *State Bar Examining Committee,* 116 Conn. 409 [165 A. 211, 214, 87 A.L.R. 991] (law); *State* v. *Dee* (Fla.) 77 So.2d 768 [50 A.L.R.2d 868] (veterinary medicine); *Nat. Milk etc. Assn.* v. *City etc. of S. F.,* 20 Cal.2d 101, 115-117 [124 P.2d 25], readopted in 24 Cal.2d 122 [148 P.2d 377] (milk purity); *City of Bakersfield* v. *Miller,* 64 Cal.2d 93, 97 [48 Cal.Rptr. 889, 410 P.2d 293] (building code); see also *Cleveland Macaroni Co.* v. *State Board of Health,* (N.D. Cal. 1919) 256 F. 376, 380 (food purity).

The power to determine who shall become eligible to qualify for a licensed activity must be accompanied by safeguards affording the applicant protection against arbitrary or self-motivated action. (*Rosner* v. *Peninsula Hospital Dist.,* 224 Cal.App.2d 115, 122 [36 Cal.Rptr. 332].) But Packer fails to identify the danger of arbitrariness or self-motivation here. The named accrediting agencies are well-respected and broadly based educational bodies. Several other accrediting agencies have been

added by administrative decision of the board, thus ensuring full coverage of qualifying schools and avoiding the danger of control of the profession by insiders. (Tit. 16, Cal. Admin. Code, § 1832.) The accrediting agencies are concerned with excellence in education and have no stake in the selection of marriage, family, and child counselors. The accrediting agencies of course may not arbitrarily deny accreditation (see *Pinsker* v. *Pacific Coast Society of Orthodontists,* 12 Cal.3d 541, 544 [116 Cal.Rptr. 245, 526 P.2d 253]), but no suggestion of arbitrariness appears here.

In sum, we find no infirmity in the education requirements of the counseling license law.

The judgment is affirmed.

Roth, P. J., and Compton, J., concurred.