[L.A. No. 31127. Feb. 26, 1980.]

JOE T. BIB'LE, Petitioner, v.
COMMITTEE OF BAR EXAMINERS OF THE STATE BAR OF
CALIFORNIA, Respondent.

COUNSEL

Paz, Rodriguez & Sanora, Nieto, Paz, Rodriguez & Sanora and Jose Angel Rodriguez for Petitioner.

Herbert M. Rosenthal, Gael T. Infande and Robert M. Sweet for Respondent.

OPINION

**THE COURT.**—Petitioner seeks review of respondent State Bar order denying petitioner's request he be exempted from taking and passing the First Year Law Student Examination (FYLSX) as a precondition of eligibility to take the general bar examination.

The general bar examination is administered by respondent Committee of Bar Examiners of the State Bar (committee) semiannually. With exceptions not here pertinent, only persons who take and pass such an examination are eligible to become members of the bar and thus to engage in the practice of law. (See Bus. & Prof. Code, §§ 6060, 6062.)

The Rules Regulating Admission to Practice Law in California establish the eligibility of persons wishing to take the general bar examination.[1] The rules require, inter alia, that such persons demon-

---

[1]Such rules have been adopted pursuant to provisions of the State Bar Act. (Bus. & Prof. Code, § 6060 et seq.) The rules are set out in West's Annotated Business and Professions Code, following section 6069. All references to rules hereinafter shall be to the Rules Regulating Admission to Practice Law in California.

strate they have satisfactorily completed a first-year course of prescribed study, e.g., contracts, torts and criminal law. Persons who take and pass the FYLSX satisfy the requirement. Also, persons who have satisfactorily completed prescribed courses of study at an accredited law school are deemed to have satisfied the requirement and are exempt from taking the FYLSX. Petitioner claims he has satisfactorily completed such a first-year course of study covering the prescribed subjects and thus is exempt from taking the FYLSX. ■ We conclude petitioner has not fulfilled requirements for exemption and, even if deemed to be exempt, has not completed other educational requirements as a further precondition to taking the general bar examination.[2]

Petitioner's record of law study is set out in the margin.[3] As pertinent to issues herein it shows, first, that petitioner did not complete a first year of study in a manner entitling him to the claimed exemption from the FYLSX. Rule VI, section 64 provides that to be exempt an applicant have "satisfactorily completed the first year course of instruction in a law school accredited by the committee . . . . A general applicant shall be deemed to have satisfactorily completed the first year course of instruction in an accredited law school when he is advanced to the second year course of instruction at the same accredited law school, whether or not on probation." Petitioner did not satisfactorily complete his first year course of study at Northrop. He was academically disqualified at the end of his first year, having received passing grades but no grade judged by Northrop to be satisfactory, and having failed criminal procedure. He was not advanced to the "second year course of instruction at the same accredited law school," and thus is not exempt pursuant to the established rule.

---

[2]Those educational requirements for persons not graduating from an accredited law school are set out in rule IX, section 91(2)(a). Such a person must "study the law diligently and in good faith *for at least four years.*" (Italics added.) To receive credit for a year's study, an applicant "shall have received passing grades in courses for which classroom attendance was required for a minimum of 270 hours extending over a period of not less than one academic year."

[3]Petitioner first entered Northrop Institute of Technology (Northrop), an accredited law school, in the fall quarter 1974, enrolling in courses in contracts, torts and criminal law. He withdrew from all such courses. He enrolled in the same courses in the winter quarter 1975 but again withdrew. Petitioner reentered the same law school in the academic year 1975-1976, again enrolling in the same courses. He completed these courses, receiving "passing" but not "satisfactory" grades in contracts and torts. His grades for criminal law were 50 for fall and winter quarters, and 40 for criminal procedure in spring quarter. A grade below 50 is a failure at Northrop and a grade in the range 70 to and including 79 is deemed to be "satisfactory." Petitioner was academi-

■ Petitioner further contends certain events work an estoppel against the committee, precluding a requirement that he take and pass the FYLSX before completing his studies and taking the general bar examination. To successfully invoke such a doctrine against a quasi-governmental agency petitioner must establish that the committee's conduct was intended—or that petitioner had the right to believe it was intended—to be acted upon by petitioner to his injury. (*Crumpler* v. *Board of Administration* (1973) 32 Cal.App.3d 567, 581 [108 Cal.Rptr. 293]; see also *Driscoll* v. *City of Los Angeles* (1967) 67 Cal.2d 297, 305 [61 Cal.Rptr. 661, 431 P.2d 245].) Additionally, petitioner must establish that he was ignorant of the true state of facts—that he was unaware he was required to take and pass the FYLSX before proceeding to complete his law school studies in preparation for the general bar examination. (*Id.*)

---

cally disqualified, not having received one "satisfactory" grade in three quarters of study. He was credited with 240 classroom hours within the meaning of rule IX, section 91(2)(a).

Petitioner next entered Valley University Law School (Valley), an unaccredited institution, in June 1976. He passed courses of study during the summer quarter in legal bibliography, community property and workers' compensation. Having passed these courses and being credited with 90 classroom hours, he completed one academic year within the meaning of rule IX, section 91(2)(a).

Petitioner continued his studies at Valley for four additional quarters before academic disqualification at the end of summer quarter 1977. In the fall quarter 1976, he commenced courses in evidence and real property, both three-quarter studies. He met "in progress" standards at the end of each of the fall and winter quarters, but failed both courses after final examinations in the spring quarter and received no course credit. He passed courses in unemployment and social security law with a grade of 55, trust law with a grade of 56 and civil rights law with a grade of 57. At Valley, 55 is the lowest passing grade. Petitioner also passed a course in entertainment law with a grade of 70 and received a "Passing" grade in bankruptcy law. During these quarters of study petitioner earned only 15 credits and 150 hours of classroom study in which he received passing grades. However, if he were given classroom hour credit for the first two quarters in real property and evidence, he could be deemed to have satisfied the 270-hour requirement for the second year.

Petitioner apparently dropped out of law school after disqualification at Valley in 1977 until he enrolled at People's College of Law (People's), an unaccredited institution, for spring semester 1978. He finished his studies at the end of spring semester 1979 and was awarded a J.D. by People's. In his first two semesters at People's he completed 270 hours of classroom attendance. The record also shows that between those two semesters petitioner was a visiting summer student at Western State University College of Law (Western), an accredited school. He took a course in criminal procedure, received a grade of D and was credited with 30 classroom hours of attendance. Thus in his third year of study, petitioner was credited with 300 classroom hours.

During petitioner's fourth year of study, petitioner was credited with 135 classroom hours at People's in the spring semester 1979.

As far as appears, petitioner has earned no further credits within the meaning of rule IX, section 91(2)(a).

Petitioner particularly claims the estoppel arises from a letter written in 1976 by an employee of the committee, apparently at petitioner's request, to the California Department of Rehabilitation advising that petitioner was currently enrolled in a summer school program and—should he receive passing grades—that "he will have successfully completed one year of law study, complying with Rule IX, sec. 2(a)."[4] The purpose of the letter was to establish petitioner's eligibility to receive continuing financial assistance from the department. It states only that petitioner would complete a first-year study in accordance with the rule setting forth educational requirements for the completion of each of four years of study as a precondition for taking the general bar examination. Neither the letter nor the rule referred to deal with the FYLSX; that examination and exemptions thereto are dealt with in rule VI, section 64, not rule IX. However, petitioner claims the content of the letter is evidence of committee conduct intended to induce action by petitioner in reliance on his claimed exemption from the FYLSX.

Even assuming a factual basis for the claimed estoppel, there are strong policy reasons for not invoking the doctrine in the circumstances of this case.[5] Estoppel will not ordinarily lie against a governmental agency if the result will be the frustration of a strong public policy. (See *City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462, 493 [91 Cal.Rptr. 23, 476 P.2d 423]; *County of San Diego* v. *Cal. Water etc. Co.* (1947) 30 Cal.2d 817, 829-830 [186 P.2d 124, 175 A.L.R. 747]; *Pettitt* v. *City of Fresno* (1973) 34 Cal.App.3d 813, 819 [110 Cal.Rptr. 262].) In none of the cases relied on by petitioner for the proposition that estoppel will lie against a public agency was the frustration of a strong public policy placed in issue. (See *Canfield* v. *Prod* (1977) 67 Cal.App.3d 722 [137 Cal.Rptr. 27]; *Hartway* v. *State Board of Control* (1976) 69 Cal.App.3d 502 [137 Cal.Rptr. 199]; *Advance Medical Di-*

---

[4]As near as can be determined, the section reference ("2(a)") should have been 91(2)(a).

[5]Petitioner would be hard pressed to establish a factual basis. Not only are there no express or implied references to the FYLSX or its exemptions in the letter, but on at least two occasions prior to petitioner's first year law studies the committee put petitioner on notice of the requirements of the FYLSX and the exemptions therefrom. Petitioner was aware of the requirements, advising the committee in 1975 on his registration form that he would be exempt because he expected to successfully complete his first-year course of study at an accredited law school. It further appears that the Department of Rehabilitation, at a time earlier than petitioner claims he first became aware that the requirement of the FYLSX applied to him, wrote petitioner stating it had previously advised him "it would be necessary for you to take and pass the Baby Bar Examination (FYLSX) in June 1977 for continuing sponsorship by this agency."

*agnostic Laboratories* v. *County of Los Angeles* (1976) 58 Cal.App.3d 263 [129 Cal.Rptr. 723].)

There is a strong public policy in the requirement of the FYLSX. It serves a dual purpose of protecting persons who are ill-suited for a legal career from continuing to spend time, money and effort following completion of a one-year study in an effort that has little chance of success, and it affords persons who are better qualified for a legal career an opportunity to measure the quality of their training and education after the first-year study to better prepare themselves for the general bar examination.[6] Such policy will surely be frustrated if the committee can be estopped from requiring an applicant to take and pass the FYLSX when that applicant is not exempt therefrom. (See *Packer* v. *Board of Behavioral Science Examiners* (1975) 52 Cal.App.3d 190 [125 Cal.Rptr. 96].)

Petitioner's record of law school studies (see fn. 3, *ante*) also establishes that aside from any question of the requirement that petitioner take and pass the FYLSX, petitioner is not now eligible to take the general bar examination. Petitioner has not completed his fourth year of study, as required of applicants for the general bar examination completing their studies at unaccredited law schools. (Rule IX, § 91(2)(a).) At best, petitioner can be credited with but three and a half years of study even allowing him credit for the second year of study during which he did not receive passing grades for all the classroom hours so credited. He thus fails to satisfy requirements of rule IX, section 91(2)(a).

■ Petitioner also claims the FYLSX constitutes an impermissible discrimination against persons required to study law in unaccredited schools. He asserts his right to practice law is a fundamental interest and that any state discrimination designed to deny or interfere with such right must be subject to strict scrutiny and supported by a compelling state interest.

---

[6]The FYLSX is the end result of a 1933 Report of President's Advisory Committee submitted to the Board of Governors of the State Bar. The report recited pressures in some law schools to secure and maintain enrollment of students not qualified to become members of the bar. It was further reported that because unqualified students were not eliminated in many unaccredited law schools, it was not until such students had failed the bar examination after years of study that they realized they would never qualify for admission to the bar. Beginning in 1935 the committee required all first year students to take an examination in first year courses, except for those students receiving first year course instruction in schools approved by the committee.

This court has articulated the appropriate test in examining claims of discrimination in occupational and professional licensing. "The conventional 'rational relationship' test is traditionally applied in cases involving occupational licensing...." (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 17 [112 Cal.Rptr. 786, 520 P.2d 10].) We rejected in *D'Amico* a contention that the right to be licensed in a profession—there osteopathy—was a fundamental interest: "Nor can it be said that the instant case touches upon 'fundamental interests' as that term has lately been defined by the United States Supreme Court, for the right to be admitted to a certain profession is not a right 'explicitly, or implicitly guaranteed by the Constitution.' (*San Antonio School District* v. *Rodriguez* (1973) 411 U.S. 1, 33-34....)" (*Id.*, at pp. 17-18.) Accordingly, the rules here under attack have a presumption of constitutionality and require only that the distinctions drawn bear some rational relationship to a conceivable legitimate state purpose. (See *Schware* v. *Board of Bar Examiners* (1957) 353 U.S. 232 [1 L.Ed.2d 796, 77 S.Ct. 752, 64 A.L.R.2d 288]; *Hackin* v. *Lockwood* (9th Cir. 1966) 361 F.2d 499 (cert. den. 385 U.S. 960 [17 L.Ed.2d 305, 87 S.Ct. 396]).)

Recent court decisions have uniformly rejected the claim there is no rational relationship to a legitimate state purpose in rules requiring different treatment in bar admissions depending on the nature or quality of legal education and training received by applicants to the bar. (See *Huffman* v. *Montana Supreme Court* (D.Mont. 1974) 372 F.Supp. 1175, affd. (1974) 419 U.S. 955 [42 L.Ed.2d 172, 95 S.Ct. 216]; *Goldsmith* v. *Pringle* (D.Colo. 1975) 399 F.Supp. 620.)

There is no question the FYLSX serves a legitimate state interest. It both protects persons from continuing to pursue a profession for which they are not qualified, and aids qualified persons in judging the quality of the training and education they are receiving in preparation for the bar examination. Not only are these legitimate state interests but there is a rational basis for the different treatment of students receiving instruction at accredited and unaccredited schools because the committee, by setting standards for accreditation, can impose minimum standards on the quality of education at accredited schools.[7] Petitioner's equal protection challenge is thus without merit.

---

[7]Schools seeking and maintaining accreditation must meet qualitative standards set out in rule XVIII, section 182. Among such standards are quality of the faculty, numbers of full-time faculty members, plant and library facilities, admission policies

Petitioner also claims denial of procedural and substantive due process in requiring him to take the FYLSX. He has failed to develop such argument other than to claim unfairness in his treatment. Our review of the record fails to disclose wherein he has been unfairly treated in any instance.

Petitioner is entitled to no relief.

Bird, C. J., concurred in the judgment only.

NEWMAN, J.—I concur in the result. I do not agree with the majority's dicta concerning estoppel. In *Packer* v. *Board of Behavioral Science Examiners* [52 Cal.App.3d 190 (125 Cal.Rptr. 96)] (*ante*, p. 554), for example, there was no "detrimental reliance" (52 Cal.App. 3d at p. 196). And by no means am I persuaded that the First Year Law Student Examination exemplifies the kind of "strong rule of policy, adopted for the benefit of the public" that troubled the justices in *Long Beach* [3 Cal.3d 462, 493 (91 Cal.Rptr. 23, 476 P.2d 423)], *San Diego* [30 Cal.2d 817, 829-830 (186 P.2d 124, 175 A.L.R. 747)], and *Fresno* [34 Cal.App.3d 813, 819 (110 Cal.Rptr. 262)] (*ante*, p. 553).

Concerning the majority's discussion of "a fundamental interest," I still endorse the views set forth in Justice Mosk's concurring opinion in *Hawkins* v. *Superior Court* (1978) 22 Cal.3d 584, 595-607 [150 Cal.Rptr. 435, 586 P.2d 916]

designed to eliminate the unqualified, scholastic standards designed to recognize qualified and unqualified students, and procedures to eliminate the unqualified after admission.