[No. B026344. Second Dist., Div. Five. Sept. 21, 1988.]

ALLAN EUGENE MORRISON, Plaintiff and Appellant, v. CALIFORNIA HORSE RACING BOARD, Defendant and Appellant; HOLLYWOOD PARK OPERATING COMPANY, Real Party in Interest and Respondent.

COUNSEL

Hecht, Diamond & Greenfield and Roger Jon Diamond for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, Henry G. Ullerich and John J. Crimmins, Deputy Attorneys General, for Defendant and Appellant.

Mitchell, Silberberg & Knupp, John A. Slezak and Iverson, Yoakum, Papiano & Hatch for Real Party in Interest and Respondent.

OPINION

LUCAS, P. J.—California Horse Racing Board appeals from a judgment ordering it to set aside an administrative decision excluding Allan Eugene Morrison from all California racetracks; Morrison cross-appeals from the court's upholding of an order by Hollywood Park Operating Company excluding him from that racetrack.

FACTS

In 1979, Morrison applied to the California Horse Racing Board (Board) for an owner's license. He received his license, and the license was renewed in 1982 and 1984.

On June 29, 1985, Morrison was ejected from Hollywood Park and excluded from all California racetracks pursuant to Board action under title 4, California Code of Regulations section 1980, subdivision (a)(6). That section provides that persons who have been convicted of a crime involving moral turpitude are prohibited from participation in parimutuel wagering and from being present within any racing inclosure.

Hollywood Park security personnel also participated in Morrison's ejection and exclusion from that racetrack, under both section 1980, subdivision (a)(6), and under section 1990, which permits a racing association to

deny access to or remove a person from its premises for any reason it deems appropriate.

Morrison requested and received an administrative hearing to adjudicate the propriety of the exclusions by the Board and Hollywood Park. The referee's proposed decision sustaining the ejection and exclusion orders was adopted by the Board. The Board found that Morrison was within the classes of persons who are to be prohibited from participating in parimutuel wagering and from being present within a racing inclosure because of his convictions of robbery in 1954, bank robbery in 1963 and selling obscene material in 1978. The Board also found that Hollywood Park had established rational reasons to deny Morrison access to its racetrack under section 1990.

Morrison filed a petition for writ of administrative mandamus seeking to set aside the Board's decision. After hearing, the trial court denied the petition. Morrison moved for a new trial. The court granted the motion, vacated the judgment and remanded the matter to the Board. The court instructed the Board to make a finding as to whether Morrison had disclosed his 1963 robbery conviction at the time he applied for his owner's license, and to prepare a decision addressing Morrison's estoppel contention with respect to that conviction. In reaching its decision, the Board was not to consider Morrison's 1954 juvenile robbery conviction or his 1978 misdemeanor obscenity conviction.

On August 24, 1986, the Board issued its decision-after-remand. The Board found that Morrison had not disclosed his 1963 bank robbery conviction when he applied for his owner's license, and that even if he had done so, estoppel should not be applied because that would deprive the public of the protections of the horse racing statutes which are designed to keep horse racing and parimutuel wagering honest. The ejection and exclusion orders by the Board and Hollywood Park were sustained.

Morrison again sought writ of administrative mandamus to set aside the decision of the Board. After argument the court granted the petition as to the Board, holding that it was estopped to eject or exclude Morrison based on the 1963 bank robbery conviction because it had either actual or constructive knowledge of the conviction in 1982, if not earlier. The court found Hollywood Park had no such knowledge and thus was not estopped from excluding Morrison. Judgment was entered, the Board appeals from that portion of the judgment granting the petition for peremptory writ of mandate ordering it to set aside its administrative decision affirming Morrison's exclusion by the Board, and Morrison cross-appeals from the portion

of the judgment denying the petition for writ of mandate with respect to his exclusion by Hollywood Park.

## TIMELINESS OF WRIT PETITION

The Board contends Morrison's motion for peremptory writ of mandate after the Board's decision-after-remand was untimely filed. ■ Under Business and Professions Code section 19463, the propriety of any final administrative action of the Board is subject to court review if the action is commenced in court within 30 days of the Board's action. This statute of limitations requires that a petition for writ of mandate challenging the Board's administrative action regarding ejection and exclusion from racetracks must be filed within 30 days of the Board decision. (*Jones* v. *California Horse Racing Bd.* (1986) 185 Cal.App.3d 984, 986-988 [230 Cal.Rptr. 230].)

In this case, the original Board decision was rendered on February 24, 1986, and the petition for writ of mandate was filed on March 24, 1986, within the 30-day statute of limitations of Business and Professions Code section 19463.

After initially entering judgment denying the writ petition, the trial court then vacated that judgment and remanded the matter to the Board for further proceedings. The Board's decision-after-remand was rendered on August 24, 1986. Morrison filed his notice of motion for order granting peremptory writ of mandate on November 5, 1986, more than 30 days after the Board's decision.

However, the trial court's order vacating the original judgment and remanding the matter to the Board expressly provided for judicial review of the Board's decision-after-remand: "After proceeding in accordance with this interim remand order, the Board shall arrive at its decision and submit a copy of the decision to the parties. Thereafter, if any party to this proceeding should desire judicial review of the decision of the Board, the party desiring further judicial review shall first check with the Clerk of the Court to determine a suitable date and then notice a hearing for such date. Any other party may file a timely response to any motion filed by a party."

By this order, the court apparently intended to retain the jurisdiction obtained under the original writ petition to review the Board's action-after-remand. A party was not required to file a new petition for writ of mandate, but merely had to restore the original, timely petition to the court calendar. The 30-day limitations period of section 19463 was not applicable to Morrison's motion to restore the matter to the calendar after remand.

## ESTOPPEL

■ The trial court found the Board was estopped from asserting Morrison's 1963 bank robbery conviction as a basis for exclusion because the conviction was disclosed to the Board on Morrison's 1982 license renewal application, if not earlier, and because the Board had obtained Morrison's rap sheet showing his conviction record, including the 1963 conviction. We disagree with the court's conclusion.

■ "The doctrine of equitable estoppel is founded on concepts of equity and fair dealing. It provides that a person may not deny the existence of a state of facts if he intentionally led another to believe a particular circumstance to be true and to rely upon such belief to his detriment." (*Strong* v. *County of Santa Cruz* (1975) 15 Cal.3d 720, 725 [125 Cal.Rptr. 896, 543 P.2d 264].)

The four elements necessary for such estoppel are: 1) the party to be estopped must be apprised of the facts; 2) that party must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; 3) the other party must be ignorant of the true facts; and 4) he must rely upon the conduct to his injury. (*City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462, 489 [91 Cal.Rptr. 23, 476 P.2d 423].)

■ The basis for the trial court's finding of estoppel was that the Board knew in 1982, if not earlier, of Morrison's 1963 conviction, but still issued and renewed his owner's license. A highly contested issue was whether Morrison had disclosed this conviction in 1979 when he applied for his owner's license. His 1979 application had been destroyed in accordance with the Board's business practice of keeping applications for only five years. Morrison testified before the hearing officer that he had disclosed that conviction to a Board representative prior to issuance of his license; he initially testified in his deposition that he did not remember whether he made such disclosure to the Board, then testified that he did disclose it.

The Board rejected Morrison's assertion of prelicensure disclosure, finding that he was not a credible witness. The trial court did not directly review the evidence to support this finding, noting that the Board had Morrison's rap sheet showing the 1963 conviction, and it had his 1982 renewal application on which Morrison answered "Yes" in response to the question "Have you ever been convicted of a felony?" Thus, the Board knew or had reason to know, no later than 1982, that Morrison suffered a 1963 conviction for bank robbery, yet it issued and renewed his owner's license. The court found Morrison engaged in the horse racing business as

an owner in reliance on the issuance and renewals of his owner's license, as the Board should have known he would, and the Board should therefore be estopped from relying on the 1963 conviction six years later to exclude him from racetracks.

The problem with this determination is that, as a matter of law, Morrison could not reasonably rely on the issuance of an owner's license to prevent his ejection or exclusion from racetracks. Board rule 1485, subdivision (c) expressly provides: "Possession of a license does not, as such, confer any right upon the holder thereof to employment at or participation in a race meeting or to be within the inclosure." (Cal. Code Regs., tit. 4, § 1485, subd. (c).) It is clearly within the contemplation of the Board rules that a licensed owner might not be permitted entry into the racetrack. (See also Cal. Code Regs., tit. 4, § 1484, regarding exclusion and fitness to hold a license.) In the face of the Board rules, we hold that any reliance by Morrison on his licensing as assurance that he would be admitted to California racetracks was not reasonable and was thus insufficient to invoke the doctrine of equitable estoppel. (See *Penn-Co.* v. *Board of Supervisors* (1984) 158 Cal.App.3d 1072, 1081 [205 Cal.Rptr. 298].)

A second problem with application of estoppel in this case is the public policy restraints on estopping the government. ■ "[A]lthough estoppel may be applied against the government when justice and right require it, the doctrine is inapplicable if it would result in the nullification of a strong rule of policy adopted for the benefit of the public." (*Strong* v. *County of Santa Cruz, supra,* 15 Cal.3d at p. 725.)

■ Horse racing and wagering are subject to a comprehensive scheme of regulation under which the Board is empowered to enact rules for exclusion of "any known bookmaker, known tout, person who has been convicted of a violation of any provision of this chapter or of any law prohibiting bookmaking or any other illegal form of wagering on horseraces, or any other person whose presence in the inclosure would, in the opinion of the board, be inimical to the interests of the state or of legitimate horseracing, or both." (Bus. & Prof. Code, § 19572.) Implicit in this exclusionary power is the recognition that the public's interest in legitimate horse racing and wagering requires its protection from individuals the Board rationally believes will threaten the honesty, fairness and safety of the activity. (See *Flores* v. *Los Angeles Turf Club* (1961) 55 Cal.2d 736, 744-745 [13 Cal.Rptr. 201, 361 P.2d 921].) It is under this authority that rule 1980(a)(6) was enacted, prohibiting "Persons who have been convicted of a crime involving moral turpitude" from wagering or being present within the inclosure. (Cal. Code Regs., tit. 4, § 1980, subd. (a)(6).)

The public interest in protection from those whose presence at racetracks is inimical to legitimate horse racing is strong. In contrast, the unfairness to Morrison caused by his belated exclusion, after six years of ownership licensing, is limited. As he admitted, his ownership and racing of horses does not require that he be present at the racetracks. He acknowledged that there are in fact absentee owners who rarely attend the races in which their California horses run.

"Estoppel will not ordinarily lie against a governmental agency if the result will be the frustration of a strong public policy." (*Bib'le* v. *Committee of Bar Examiners* (1980) 26 Cal.3d 548, 553 [162 Cal.Rptr. 426, 606 P.2d 733].) Here, where strong public policy underlies the regulation of the types of persons who can attend and wager on legitimate horse racing, and where the claimed unfairness to the individual resulting from the agency's delay in exercising its regulatory power is slight, estoppel should not be applied. The trial court erred in holding the Board was estopped from excluding Morrison based on his 1963 bank robbery conviction.

## LACHES

Morrison's assertion that the Board should be barred by laches fails for the same reason. ■ Where there is no showing of manifest injustice to the party asserting laches, and where application of the doctrine would nullify a policy adopted for the public protection, laches may not be raised against a governmental agency. (*Mary R.* v. *B. & R. Corp.* (1983) 149 Cal.App.3d 308, 315-316 [196 Cal.Rptr. 871].)

Morrison has conceded that his ownership and racing of horses does not depend upon his presence at the racetrack. The only other prejudice he asserts from the Board's delay in relying on his 1963 conviction to exclude him is that his 1979 application for an owner's license has been destroyed. However, that document was not necessary to establish his 1963 bank robbery conviction. It would merely have settled the dispute as to whether he had disclosed the conviction to the Board when he first applied for a license. Such information, although relevant, was not crucial to the resolution of the estoppel claim, and thus did not so severely prejudice Morrison as to outweigh the public's strong interest in the regulation of horse racing.

## ADMINISTRATIVE HEARING

■ Morrison claims he was deprived of due process because the Board did not provide a trained lawyer to conduct his administrative hearing. Under Government Code section 11502, hearings conducted pursuant to the Administrative Procedure Act must be presided over by an administra-

tive law judge admitted to practice law in California for at least five years. However, the proceeding in question was an exclusion hearing brought pursuant to Business and Professions Code section 19573. The Administrative Procedure Act has been held not to apply to such exclusion hearings. (*Aroney* v. *California Horse Racing Bd.* (1983) 145 Cal.App.3d 928, 931-932 [193 Cal.Rptr. 708].)

Morrison correctly notes that the Administrative Procedure Act does apply to license revocation proceedings before the Board. (*Ibid.*) However, the fact that his exclusion may ultimately provide a basis for revocation of his owner's license does not convert the exclusion hearing into a revocation hearing with all its attendant procedural requirements. It is clear from the record that no issues regarding Morrison's owner's license were considered by the hearing officer or addressed by the Board. No denial of due process resulted from a nonlawyer conducting the exclusion hearing.

### EXCLUSION UNDER RULE 1980(a)(6)

■ Both Hollywood Park and the Board excluded Morrison based on rule 1980, subdivision (a)(6), which prohibits a person who has been convicted of a crime involving moral turpitude from being present within the inclosure of a racetrack. Morrison's 1963 conviction is for bank robbery, a crime involving moral turpitude. (See *People* v. *Collins* (1986) 42 Cal.3d 378, 390, fn. 10 [228 Cal.Rptr. 899, 722 P.2d 173].) This prior conviction is therefore a proper basis for Morrison's exclusion under rule 1980, subdivision (a)(6).

### EXCLUSION UNDER RULE 1990

■ Hollywood Park also excluded Morrison based on rule 1990, which provides: "Nothing contained in these rules shall be deemed, expressly or impliedly, to prevent an association from exercising the right to deny access to or to remove any person from its premises or property for any reason the association deems appropriate notwithstanding the fact that such reason is not one specified in these rules."

Contrary to Morrison's assertion, nothing in the regulatory scheme limits application of this rule to on-premises conduct. Rule 1980 sets forth specific types of conduct which may occur either on or off premises which require exclusion. Rule 1989 sets forth specific types of on-premises conduct which justify ejection. Rule 1990 appears to be a "catch-all" provision permitting an association to eject or exclude a person for "any reason the association deems appropriate" even if it is not a reason otherwise specified "in these rules." Inasmuch as the reasons specified in the rules encompass both on-

premises and off-premises conduct, it is reasonable to conclude that an appropriate reason under rule 1990 could also involve either on-premises or off-premises conduct.

Substantial evidence of off-premises conduct supports Hollywood Park's exclusion of Morrison under this rule. His 1963 federal conviction for bank robbery was conclusively established. There was also evidence of his May 1985 arrest for attempted extortion, loan sharking, and possession of cocaine. The hearing officer had before him the transcript of the preliminary hearing upon which the municipal court found sufficient cause to believe Morrison had committed the alleged crimes and held him to answer.[1]

The testimony at the preliminary hearing included that of Gary Brown, the victim of the attempted extortion, who described the excessive and illegal amount of interest Morrison charged him on two loans and the threats and intimidation used by Morrison to coerce further payments from him, including a threat to kill him if he did not pay.

There was also testimony by the two other victims of Morrison's alleged loan sharking, Geoffrey Kiesel and Mark Morze. According to their testimony, Morrison loaned them each $5,000 and required them each to pay $200 per week as interest and fully repay the principal.

This evidence of Morrison's conduct involving threats, intimidation and illegal loan activities provided a rational basis to justify Hollywood Park's determination that Morrison's presence in the inclosure at Hollywood Park would be inimical to the interests of legitimate horse racing. (Bus. & Prof. Code, § 19572.) Substantial evidence supports the decision to exclude him pursuant to rule 1990. The court properly denied the petition for writ of mandate seeking to overturn this determination.

We have considered Morrison's additional contentions regarding the conduct of the administrative hearing and find that they lack merit. We also reject Hollywood Park's request for imposition of sanctions.

---

[1] In August 1988, Morrison entered into a plea bargain with the state pursuant to which he pled nolo contendere to one count of usury involving Gary Brown. Proceedings were suspended, and Morrison was placed on three years' probation, with the condition that he spend the first 180 days in county or city jail. He was also ordered to make restitution. The remaining counts were dismissed. At the request of Hollywood Park, we take judicial notice of the disposition of this matter. (Evid. Code, §§ 452, subd. (d)(1), 459.)

## DISPOSITION

The portion of the judgment granting the petition for writ of mandate as to the California Horse Racing Board is reversed; in all other respects the judgment is affirmed. Parties to bear their own costs on appeal.

Boren, J., and Kennard, J., concurred.

A petition for a rehearing was denied October 20, 1988, and the petition of plaintiff and appellant for review by the Supreme Court was denied December 7, 1988.