[Civ. No. 25726. Fourth Dist., Div. Two. June 7, 1982.]

ACHILLES P. ANTON, Plaintiff and Appellant, v.
SAN ANTONIO COMMUNITY HOSPITAL, Defendant and
Respondent.

COUNSEL

Arthur J. Jaffee for Plaintiff and Appellant.

Musick, Peeler & Garrett and Joseph A. Saunders for Defendant and Respondent.

OPINION

**KAUFMAN, J.**—Achilles P. Anton (plaintiff) appeals from a judgment denying his petition for a peremptory writ of mandate to compel San

Antonio Community Hospital (Hospital) to reinstate him to membership on Hospital's medical staff.

This case has been before us before and has been the subject of a decision of the California Supreme Court, *Anton v. San Antonio Community Hosp.* (1977) 19 Cal.3d 802 [140 Cal.Rptr. 442, 567 P.2d 1162] (hereinafter *Anton I*). The background facts are extensively set forth in that decision, and for convenience portions are repeated here.

"For 13 years preceding the events here in question plaintiff had been a member of defendant hospital's medical staff—an unincorporated association organized under the auspices of the hospital's board of directors as required by section 2392.5 of the Business and Professions Code. [Fn. omitted.] During that period, however, he had been the subject of several corrective and/or disciplinary actions taken by committees of the medical staff relative to his failure to complete hospital medical records." (*Anton I, supra*, 19 Cal.3d at p. 809.)

In December 1973, as a result of an investigation of plaintiff's hospital practices, plaintiff's application for annual reappointment was not granted along with those of all other members of the medical staff. In January 1974, at a special joint meeting of the executive and credentials committees of the medical staff it was resolved that plaintiff's hospital privileges should be summarily suspended. Plaintiff requested a preliminary hearing to which he was entitled under the bylaws. A hearing was held and the suspension of plaintiff's hospital privileges was upheld.

In February 1974, plaintiff requested a formal hearing and a judicial review committee was appointed in accordance with the bylaws. Plaintiff was advised by letter of the charges on which the recommendation for suspension was based.[1] On March 5, 1974, the formal hearing was

---

[1]The charges were: "'(1) Your lack of cooperation and repeated violations of the Rules and Regulations of the Medical Staff Bylaws relative to the completion of histories and physical examinations within the required period, as evidenced by the following records: [Citation by number of 54 hospital records.]

"'(2) Repeated violations of the Rules and Regulations of the Medical Staff Bylaws relative to the completion of hospital records in general, as evidenced by the following records: [Citation by number of 14 hospital records.]

"'(3) Failure to visit hospitalized patients on a timely basis, as evidenced by the following records: [Citation by number of four hospital records.]

"'(4) Over utilization of hospital facilities and services, as evidenced by the following records: [Citation by number of 10 hospital records.]'" (*Anton I, supra*, 19 Cal.3d at pp. 810-811.)

commenced before the judicial review committee, which had been appointed by the executive committee and consisted of five members and two alternates, all of whom were members of the medical staff. At the conclusion of the hearing the committee recommended to the medical staff and board of directors that plaintiff's hospital privileges be suspended and that he not be reappointed to the medical staff, citing the four charges set forth in the letter earlier sent to plaintiff (see fn. 1, *ante*).

Plaintiff then requested an appellate review of the judicial review committee decision. He was notified that an appellate review hearing would take place before the board of directors in accordance with the medical staff bylaws as revised. On May 13, 1974, at the conclusion of the appellate review proceedings, the board of directors resolved to sustain the decision of the judicial review committee.

On June 5, 1974, plaintiff filed a petition for writ of mandate to compel his reinstatement to medical staff membership. The petition alleged numerous fair procedure violations and challenged the sufficiency of the evidence to support Hospital's not reappointing him to the medical staff. Trial was held on an agreed statement of facts submitted by the parties, and the trial court, utilizing a substantial evidence standard of review, determined that the procedures followed accorded with law and that substantial evidence supported the determination made by the board of directors. Accordingly, judgment was entered denying issuance of a peremptory writ of mandate.

Plaintiff appealed to this court contending that the correct standard of review in the trial court was the independent judgment standard and that the proceedings before hospital's several committees and board of directors did not afford him the fair procedure to which he was entitled. We affirmed the judgment.

The California Supreme Court granted hearing and in its decision in *Anton I* held that plaintiff's application for reappointment to Hospital's medical staff involved a vested and fundamental right and that pursuant to Code of Civil Procedure section 1094.5, subdivision (c),[2] the trial

---

[2]At the time of its decision, the applicable scope of review was set forth in subdivision (c) of section 1094.5 of the Code of Civil Procedure, which provided: "Where it is claimed that the findings are not supported by the evidence, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence; and in all other cases, abuse of discretion is established if the

court erred in not exercising its independent judgment in reviewing the factual basis for the decision of Hospital's board of directors. However, the Supreme Court rejected all of plaintiff's claims that he was not accorded fair procedure and held that the procedures followed by Hospital did afford plaintiff the fair procedure required by law. (19 Cal.3d at p. 825 et seq.) The judgment was reversed and the cause remanded to the trial court for further proceedings consistent with the opinion. The decision issued August 31, 1977.

After remand but before retrial, the Legislature, on September 30, 1978, amended section 1094.5 effective January 1, 1979. Along with several minor changes not relevant here, the 1978 amendment added subdivision (d), which reads in pertinent part: "(d) Notwithstanding the provisions of subdivision (c) [see fn. 1, *ante*], in cases arising from private hospital boards, abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record."[3]

After a number of continuances, retrial commenced on June 13, 1980. On March 24, 1981, the court entered judgment denying the writ. In its findings and conclusions, the court determined that the proceedings before the hospital board satisfied "minimal requisites of fair procedure"; that no new evidence going to the merits of plaintiff's case could be presented because the parties had stipulated to an agreed statement of facts and because plaintiff had failed to show good cause; that subdivision (d) of section 1094.5 was applicable and mandated review by the substantial evidence standard; that defendant was a private hospital within the meaning of the statute; that substantial evidence supported defendant's decision not to reinstate plaintiff to the hospital medical staff; that the Legislature had a rational basis for distinguishing between private and public hospitals; and that section 1094.5, as amended, was otherwise constitutional.

Plaintiff has again appealed contending inter alia that the trial court erred in reviewing Hospital's determination on the basis of the substan-

court determines that the findings are not supported by substantial evidence in the light of the whole record."

Unless otherwise indicated, all references will be to the Code of Civil Procedure.

[3]The balance of subdivision (d) reads: "Provided, however, in all cases in which the petition alleges discriminatory actions prohibited by Section 1316 of the Health and Safety Code, and the plaintiff makes a preliminary showing of substantial evidence in support of such allegation, the court shall exercise its independent judgment on the evidence and abuse of discretion shall be established if the court determines that the findings are not supported by the weight of the evidence."

tial evidence standard prescribed in section 1094.5, subdivision (d), and in refusing to receive additional evidence and that the original hearings before the several committees did not accord with fair procedure, because the members of the committees were members of the same medical staff as the physicians who complained of his conduct. We have concluded that plaintiff's contentions are not meritorious. Accordingly, the judgment will be affirmed.

## Discussion of Contentions and Issues

### Court's Declination to Receive Additional Evidence

On retrial the court denied plaintiff's requests to take additional evidence. The court was quite right.

Plaintiff points to footnote 24 in the *Anton I* decision where the court stated: "Because significant portions of the administrative proceedings here subject to review took place before a panel of medical doctors exercising professional judgment on matters of proper medical technique and practice, the trial court may find the record of those proceedings inadequate for the purpose of informed judicial review. If so the trial court, prior to undertaking its deliberations, may wish to remand the matter to the administrative body for further proceedings directed to the preparation of an adequate record. [Citations.]" (19 Cal.3d at p. 825.) However, so far as we are advised, plaintiff never requested that the matter be remanded to Hospital's board of directors for the taking of additional evidence; he requested that the trial court receive the evidence.

Section 1094.5, subdivision (e), provides: "Where the court finds there is relevant evidence which, in the exercise of reasonable diligence, could not have been produced or which was improperly excluded at the hearing before respondent, it may enter judgment as provided in subdivision (f) of this section remanding the case to be reconsidered in the light of such evidence; or, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, the court may admit such evidence at the hearing on the writ without remanding the case." Plaintiff contends this is a case in which the trial court was authorized by law to exercise its independent judgment and urges that the court should have received additional evidence. However, the trial court found the additional evidence could with reasonable diligence have been produced at the Hospital hearings. Moreover, as later discussed, we

have concluded that the trial court properly reviewed Hospital's determination under the substantial evidence standard.

The trial court's finding and our conclusion as to the proper standard of review in the trial court also dispose of plaintiff's contention the parties contemplated that further evidence would be received in the trial court if it should be determined that plaintiff was entitled to a "trial de novo" in the superior court.

*Lack of Fair Procedure in the Hospital Hearings*

■ In *Anton I* the court rejected as unmeritorious all of plaintiff's contentions that the procedures followed in the original proceedings denied him the "minimal requisites of fair procedure required by established common law principles." (19 Cal.3d at p. 825 et seq.) The decision of the Supreme Court in that respect constitutes the law of the case unless some exception to that doctrine applies. (See *People v. Medina* (1972) 6 Cal.3d 484, 491, fn. 7 [99 Cal.Rptr. 630, 492 P.2d 686]; *Pigeon Point Ranch, Inc. v. Perot* (1963) 59 Cal.2d 227, 231 [28 Cal.Rptr. 865, 379 P.2d 321]; *Tally v. Ganahl* (1907) 151 Cal. 418, 421 [90 P. 1049].)

As plaintiff correctly points out it is a well-recognized exception to the doctrine of law of the case that the doctrine will not be applied when there has been an intervening change in the law. (See *Puritan Leasing Co. v. Superior Court* (1977) 76 Cal.App.3d 140, 146 [142 Cal.Rptr. 676]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 651, pp. 4568-4570, and cases there cited.) Plaintiff asserts that the original proceedings did not comport with fair procedure, because "his hearing was conducted by physicians on the same medical staff in competition with him." And as to that point he contends there has been an intervening change in the law announced by the decision in *Applebaum v. Board of Directors* (1980) 104 Cal.App.3d 648 [163 Cal.Rptr. 831].

Plaintiff asserts that *Applebaum* "held that the proceedings [proceedings at Barton Memorial Hospital for the suspension of Dr. Applebaum's obstetrical privileges] were defective and did not grant to the petitioner due process because physicians on a hospital staff are so inextricably linked with other individual members of the staff that it is impossible to anticipate that they can render fair and impartial decisions regarding the denial of staff privileges." *Applebaum* held no such thing.

In *Applebaum* the court concluded in substance that the initial view of the facts based on evidence derived from nonadversarial processes as a practical matter foreclosed fair and effective consideration of the merits at the subsequent adversary hearings. (104 Cal.App.3d at pp. 657-658.) What led the court to that conclusion was succinctly stated by the court: "The investigation was . . . done by a group which included the instigator of the charges, [and] had overlapping membership in the body (executive committee) which reviewed both the initial and final decisions and to which the majority of the formal adjudicators later belonged." (*Id.*, at p. 659.) Thus, *Applebaum* did not hold that persons who are members of the same medical staff as the physician under investigation may not sit on an investigatory board, a hearing board or a review board in the matter under investigation. What *Applebaum* held is that the same member of the medical staff may not first sit on the investigatory committee and then sit as a member of the hearing committee or the review committee. Having served on one committee and having formed an opinion in the matter, the person could hardly be expected to exercise impartial judgment in the subsequent proceedings. (*Id.*, at p. 660.)

In this case there is no claim of overlapping membership on the committees conducting the investigation, hearing and appeal.

It is the law of the case that plaintiff was afforded fair procedure.

■ Moreover, plaintiff is foreclosed from advancing this contention by his failure to exhaust his administrative remedies. (See *Holderby* v. *Internat. Union etc. Engrs.* (1955) 45 Cal.2d 843, 846-847 [291 P.2d 483]; *Martino* v. *Concord Community Hosp. Dist.* (1965) 233 Cal. App.2d 51, 57 [43 Cal.Rptr. 255].) This issue was not raised at any level of the administrative proceedings notwithstanding that it would have been a cognizable issue under the provision in Hospital's bylaws prescribing as a ground for appeal the "substantial failure of the Judicial Review Committee, Executive Committee, or Board of Trustees to comply with the [prescribed] procedures . . . in the conduct of hearings and decisions upon hearings so as to deny due process and a fair hearing . . . ." (See *Anton I, supra,* 19 Cal.3d at p. 812, fn. 6.) Impartiality of the administrative tribunal is a requisite of fair procedure. (*Applebaum* v. *Board of Directors, supra,,* 104 Cal.App.3d at pp. 659, 660.)

*Independent Judgment Standard Versus Substantial Evidence Standard*

### Law of the Case

It was decided in *Anton I* that plaintiff's application for reappointment to the medical staff involved a fundamental, vested right and that therefore the trial court erred in failing to exercise its independent judgment on the evidence in determining whether Hospital's findings were supported by the evidence. (19 Cal.3d at p. 825.) Plaintiff contends that the decision in *Anton I* is the law of the case on the proper standard of review in the trial court. Not so.

As plaintiff himself pointed out in connection with the preceding issue, the doctrine of law of the case will not be applied when a change in the law has intervened between the earlier decision and the later decision. (See *Puritan Leasing Co.* v. *Superior Court, supra,* 76 Cal.App.3d at p. 146; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 651, pp. 4568-4570, and cases there cited.) The decision in *Anton I* was issued August 31, 1977. Thereafter the Legislature changed the law effective January 1, 1979, by amending section 1094.5 to add subdivision (d), the substantial evidence standard, as the proper scope of review in the superior court in administrative mandate cases "arising from private hospital boards." The doctrine of law of the case is therefore inapplicable on this point.

### Hospital Is Not a "Private Hospital"

Plaintiff next contends that Hospital is not a "private hospital" within the meaning of that term as used in subdivision (d) of section 1094.5. Nonsense. Half of the decision in *Anton I* was concerned with the questions of whether a petition for mandate under section 1094.5 was the appropriate means to seek review for a decision of a private hospital as opposed to a public or governmental hospital (19 Cal.3d at pp. 815-820) and whether the same standard of review should be applicable to the decision of a private hospital as is applicable to the review of determinations of governmental agencies (*id.*, at pp. 820-822). There would have been no call for discussion of either of those issues were Hospital not a "private hospital." Moreover, as plaintiff expressly argues in another portion of his brief, the 1978 amendment to section 1094.5 adding subdivision (d) was the legislative response to the *Anton I* decision. Manifestly the term "private hospital" as used in the statute was meant to refer to San Antonio Community Hospital and other hospitals like it organized as nonprofit corporations.

*Retroactive Application*

■ Plaintiff contends the 1978 amendment to section 1094.5 cannot and should not be applied retroactively to this case. First, it is contended that retroactive application of the amendment was not intended by the Legislature. Secondly, it is urged that retroactive application of the amendment would amount to a bill of attainder. Both contentions are devoid of merit.

Plaintiff misconceives what is meant by retroactive legislation. In respect to purely procedural statutes and statutory amendments, which subdivision (d) of section 1094.5 plainly is, the applicable law is set forth in *Aetna Cas. & Surety Co.* v. *Ind. Acc. Com.* (1947) 30 Cal.2d 388, 394 [182 P.2d 159]: "[P]rocedural changes 'operate on existing causes of action and defenses, and it is a misnomer to designate them as having retrospective effect.' [Citations.] In other words, procedural statutes may become operative only when and if the procedure or remedy is invoked, and if the trial postdates the enactment, the statute operates in the future regardless of the time of occurrence of the events giving rise to the cause of action. [Citation.] In such cases the statutory changes are said to apply not because they constitute an exception to the general rule of statutory construction, but because they are not in fact retrospective. There is then no problem as to whether the Legislature intended the changes to operate retroactively." (Accord *Olivas* v. *Weiner* (1954) 127 Cal.App.2d 597, 600-601 [274 P.2d 476]; see also *Van Nuis* v. *Los Angeles Soap Co.* (1973) 36 Cal.App.3d 222, 228, fn. 2 [111 Cal.Rptr. 228].) In the case at bench the 1978 amendment to section 1094.5 became effective January 1, 1979. Following the reversal of the judgment in the *Anton I* decision, retrial did not commence until June 13, 1980, a year and a half after the effective date of the 1978 amendment. Being purely procedural in both substance and effect, the amendment was applicable on retrial and did not constitute either invalid retroactive legislation or a bill of attainder.

*Constitutionality of the Statute*

*Due Process*

Plaintiff contends that because a fundamental vested right is involved due process requires a judicial determination of the facts; otherwise, it is urged, there is an unlawful delegation of judicial power to Hospital's board of directors. Not so.

The unlawful delegation argument is based on such decisions as *Drummey* v. *State Bd. of Funeral Directors* (1939) 13 Cal.2d 75 [87 P.2d 848], and *Laisne* v. *Cal. St. Bd. of Optometry* (1942) 19 Cal.2d 831 [123 P.2d 457], in which it was reasoned that since the state's judicial power may be exercised only by the courts and those agencies specified in the California Constitution, the adjudicatory decisions of state agencies not authorized by the constitution to exercise judicial powers must be reviewed by a court exercising independent judgment on the facts to avoid unconstitutionality. (This rationale will hereafter be referred to as the separation of powers argument.)

Plaintiff recognizes that the cases relied on involved adjudicatory decisions of governmental agencies and that Hospital is not a governmental agency. However, he urges that Hospital's decisions are tantamount to state action because as a nonprofit corporation neither its assets or revenues may inure to the benefit of a private person, because as a hospital it is highly regulated by government and is even required by state law to provide for the appointment and reappointment of medical staff (see Bus. & Prof. Code, § 2282), and because as a community hospital it is the recipient of some public funds. There are decisions indicating that notwithstanding these public connections, the actions of a private nonprofit hospital corporation do not constitute state action. (See *Ascherman* v. *Presbyterian Hosp. of Pac. Med. C., Inc.* (9th Cir. 1974) 507 F.2d 1103, 1105; accord *Musso* v. *Suriano* (7th Cir. 1978) 586 F.2d 59, 62, cert. den. (1979) 440 U.S. 971 [59 L.Ed.2d 788, 99 S.Ct. 1534]; *Hodge* v. *Paoli Memorial Hospital* (3d Cir. 1978) 576 F.2d 563, 564, and cases there cited.) However, even if the contrary were assumed, it does not follow that independent judgment judicial review of adjudicatory decisions of private hospitals is required to comport with due process of law.

Even in the case of government agencies, the separation of powers argument has been repudiated as the basis for determining the appropriate standard for judicial review of adjudicatory decisions. (*Tex-Cal Land Management, Inc.* v. *Agricultural Labor Relations Bd.* (1979) 24 Cal.3d 335, 342-346 [156 Cal.Rptr. 1, 595 P.2d 579]; see *Frink* v. *Prod* (1982) 31 Cal.3d 166, 172-173 [181 Cal.Rptr. 893, 643 P.2d 476]; cf. *Anton I, supra,* 19 Cal.3d at pp. 821-822.) As stated in *Tex-Cal*: "None of the cases that commenced in 1936 with *Standard Oil, supra,* 6 Cal.2d 557 [59 P.2d 119], and continued through *Bixby, supra,* 4 Cal.3d 130 [93 Cal.Rptr. 234, 481 P.2d 242], as well as later cases, invalidated any legislative command that findings be conclusive if

supported by substantial evidence. The language in those cases that described constitutional limitations on legislative power was unnecessary to the holdings, which could as well have been grounded in judicially fashioned rules of procedure or in interpretation of section 1094.5. In the present case, however, Tex-Cal asks us to invoke those cases' statements of constitutional doctrine for the first time to invalidate a deliberate legislative choice of the substantial evidence standard.

"There are good reasons for our declining to do that—particularly where, as here, the ALRA review standard is an integral part of a statutory scheme that contains ample safeguards of fair procedure at the administrative level. (See *Bixby, supra*, 4 Cal.3d at p. 159 (dis. opn.); 4 Davis, Administrative Law Treatise (1958) § 29.09, pp. 166-167.) For us to create a new constitutional restriction would frustrate the Legislature's intent that the ALRB serve as 'one of those agencies presumably equipped or informed by experience to deal with a specialized field of knowledge, whose findings within that field carry the authority of an expertness which courts do not possess and therefore must respect.' (*Universal Camera Corp.* v. *Labor Bd.* (1951) 340 U.S. 474, 488 [95 L.Ed. 456, 467, 71 S.Ct. 456].) [Fn. omitted.] . . . [¶] We therefore hold that the Legislature may accord finality to the findings of a statewide agency that are supported by substantial evidence on the record considered as a whole and are made under safeguards equivalent to those provided by the ALRA for unfair labor practice proceedings, whether or not the California Constitution provides for that agency's exercising 'judicial power.' Our holding does not, of course, affect review of administrative findings, where the Legislature has left the choice of standard to the courts (e.g., as in § 1094.5). We need not now consider standards applicable to the findings of local or private agencies." (*Tex-Cal Land Management, Inc.* v. *Agricultural Labor Relations Bd., supra*, 24 Cal.3d at pp. 345-346; see also *Frink* v. *Prod, supra*, 31 Cal.3d at pp. 172-173.)

Here, of course, we are concerned with the adjudicatory decision of a private agency, a matter expressly not dealt with in *Tex-Cal*. However, we observe that here, as in *Tex-Cal*, the Legislature has specifically prescribed the substantial evidence standard as the standard for judicial review, and private hospitals are required by law to afford applicants for medical staff privileges fair procedure based on longstanding common law principles (*Anton I, supra*, 19 Cal.3d at p. 825 et seq; *Pinsker* v. *Pacific Coast Society of Orthodontists* (1974) 12 Cal.3d 541, 549 et

seq. [116 Cal.Rptr. 245, 526 P.2d 253]; *Ascherman v. Saint Francis Memorial Hosp.* (1975) 45 Cal.App.3d 507, 511 [119 Cal.Rptr. 507]).

The inapplicability of the separation of powers argument to private agencies such as San Antonio Community Hospital and, indeed, to San Antonio Community Hospital itself was pointed out in *Anton I, supra,* 19 Cal.3d at page 822, where the court stated in relevant part: "By the same token, the separation-of-powers doctrine, while equally inapplicable to prevent the exercise of judicial powers by nongovernmental agencies, is *irrelevant* to the determination whether such powers are possessed by such agencies. It is clear, of course, that the agency whose decision we here consider has not been invested with judicial powers by the Constitution. Accordingly its adjudicatory decisions are subject to review under the same rules which are applicable to all decisions by administrative agencies lacking judicial powers. Those rules, which as we have pointed out are grounded in the nature of the right affected by the decision, include the rule of review announced in the *Bixby* and *Strumsky* cases." (Orig. italics deleted; italics added.)

Prior to the decision in *Anton I* it was never thought that the adjudicatory decisions of private nonprofit hospital corporations were required to be reviewed judicially on an independent judgment standard to comport with due process of law. (See *Interstate Brands v. Unemployment Ins. Appeals Bd.* (1980) 26 Cal.3d 770, 779-780 [163 Cal.Rptr. 619, 608 P.2d 707].) And the decision in *Anton I* that independent judgment judicial review was appropriate was not based on any notion that such was required by the constitutional guarantees of due process. While apparently recognizing the right of the Legislature to prescribe by statute "'the details of procedure where the writ is used for reviewing the adjudicatory decisions of administrative bodies,'" (19 Cal.3d at p. 818), the court established, in the absence of any expression of the Legislature to the contrary, a uniform standard for judicial review of the adjudicatory decisions of both public and private hospitals, stating: "It would be incongruous, we believe, to hold that the decisions of *private* hospital boards, which are required by the same decision [*Pinsker v. Pacific Coast Society of Orthodontists, supra,* 12 Cal.3d 541] to be based upon a hearing of substantially identical scope and purport, were to be subject to some different form of review." (*Id.;* italics in the orig.)

Moreover, in concluding that hospital staff membership decisions of private hospitals "'must be rendered pursuant to minimal requisites of fair procedure required by established common law principles'" (*Anton*

*I, supra*, 19 Cal.3d at p. 825), our high court has been meticulously consistent in pointing out that the requirement does not derive from the constitutional guarantees of due process of law but, rather, from established common law principles of fairness. (See, e.g., *Miller v. Eisenhower Medical Center* (1980) 27 Cal.3d 614, 627, fn. 13 [166 Cal.Rptr. 826, 614 P.2d 258]; *Pinsker v. Pacific Coast Society of Orthodontists, supra*, 12 Cal.3d at p. 550, fn. 7;[4] see also *Ezekial v. Winkley* (1977) 20 Cal.3d 267, 272-274 [142 Cal.Rptr. 418, 572 P.2d 32].)

■ We conclude that the Legislature's prescribing the substantial evidence standard for judicial review of adjudicatory decisions of private nonprofit hospital corporations does not violate due process of law where, as in this state, such private hospitals are required to make such decisions on the basis of substantive rationality and fair procedure (*Miller v. Eisenhower Medical Center, supra*, 27 Cal.3d at pp. 626-627; *Pinsker v. Pacific Coast Society of Orthodontists, supra*, 12 Cal.3d at p. 550; *Lewin v. St. Joseph Hospital of Orange* (1978) 82 Cal.App.3d 368, 385-386 [146 Cal.Rptr. 892]).

### Equal Protection

■ Finally, plaintiff assails subdivision (d) of section 1094.5 as violative of the constitutional guarantees of equal protection of laws. The argument is that there is no meaningful distinction between public and private hospitals to justify a different standard of judicial review of their adjudicatory decisions. Plaintiff also contends that in resolving the issue, the strict scrutiny test is applicable because in *Anton I* it was adjudicated that his application for reappointment to the medical staff involved a fundamental vested right. Neither contention is well taken.

We address the second contention first. A similar contention was exposed as specious and rejected in *Hernandez v. Department of Motor Vehicles* (1981) 30 Cal.3d 70, 82-83 [177 Cal.Rptr. 566, 634 P.2d

[4]Footnote 7 reads: "It is important to note that the legal duties imposed on defendant organizations arise from the common law rather than from the Constitution as such; although *Pinsker I* [*Pinsker v. Pacific Coast Soc. of Orthodontists* (1969) 1 Cal.3d 160 (81 Cal.Rptr. 623, 460 P.2d 495)] utilized 'due process' terminology in describing defendant associations' obligations, the 'due process' concept is applicable only in its broadest, nonconstitutional connotation. (See Selznick, Law, Society and Industrial Justice (1969) p. 257.) In an attempt to avoid confusing the common law doctrine involved in the instant case with constitutional principles, we shall refrain from using 'due process' language and shall simply refer instead to a requirement of a 'fair procedure.'" (12 Cal.3d at p. 550.)

917], where it was argued that because it had been held in *McConville v. Alexis* (1979) 97 Cal.App.3d 593, 600 [159 Cal.Rptr. 49], that "'possession of a driver's license rises to the level of a fundamental right,'" the right to operate a motor vehicle on the public streets and highways was a "'fundamental constitutional right'" calling for strict scrutiny. The *Hernandez* court stated: "Plaintiff's contention is clearly specious. We may assume without deciding that the loss of a driver's license does implicate interests sufficiently important 'to the individual in the life situation' to warrant *independent review of a quasi-judicial administrative decision* suspending or terminating such right. It does not follow, however, that legislative measures regulating or limiting the possession of a driver's license are subject to strict judicial scrutiny.

"In fact, plaintiff's argument in this regard betrays a serious misunderstanding of the basic foundation of the *Bixby-Strumsky* doctrine. As both *Bixby* and *Strumsky* explain, the standard of review question with which those cases deal relates to the appropriate relationship between *administrative* and *judicial* adjudicatory decisions, and does not concern the constitutional legitimacy or validity of legislative policy judgments at all. Thus, under *Bixby-Strumsky*, the 'fundamental right' category does not identify areas in which substantive legislative judgments are in any manner constitutionally suspect or justify unusual judicial scrutiny; rather, that category simply encompasses those quasi-judicial administrative decisions that have 'an impact on the individual "sufficiently vital . . . to compel a full and independent review" by the court.' (*Interstate Brands v. Unemployment Ins. Appeals Bd.* (1980) 26 Cal.3d 770, 779 [163 Cal.Rptr. 619, 608 P.2d 707].)

"Indeed, even a cursory review of the *Bixby-Strumsky* line of decisions makes it abundantly clear that the applicability of the independent judgment standard of review does not in any sense suggest that legislative measures pertaining to the individual interest at issue are properly subject to strict scrutiny review. . . ." (30 Cal.3d at p. 83.)

Plaintiff offers no other justification for departing from the rational relation standard normally applied in equal protection analysis (see *Hernandez v. Department of Motor Vehicles, supra*, 30 Cal.3d at p. 84; *Brown v. Merlo* (1973) 8 Cal.3d 855, 861 [106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505]).

It is true that from the standpoint of the procedure to be followed there is little distinction between what is required of public and private hospitals in respect to medical staff adjudications. (See, e.g., *Miller v. Eisenhower Medical Center, supra,* 27 Cal.3d at p. 626; *Anton I, supra,* 19 Cal.3d at pp. 818-820; *Lewin v. St. Joseph Hospital of Orange, supra,* 82 Cal.App.3d at p. 376, fn. 3, and cases there cited.) Nevertheless, as previously pointed out, the decisions of the California Supreme Court dealing with the required procedure for hospital adjudications of medical staff membership have consistently distinguished between public and private hospitals in respect to the source of such requirements. (See cases cited in the text at fn. 4, *ante.*) It would seem that if a valid distinction may be made between public and private hospitals for due process purposes, the distinction should also be valid for equal protection purposes. As Justice Mosk observed in dissent in *Miller v. Eisenhower Medical Center, supra,* 27 Cal.3d at page 636: "Private institutions, whether eleemosynary or operated for profit, may employ their facilities with considerably more freedom from external intervention than may those hospitals supported by the taxpayers of a state, county, city or district." With this statement, the majority apparently agreed; they responded: "[O]f course, we by no means declare that, in the words of the dissenting opinion, 'rules for staff admission applicable to public hospitals apply equally to private hospitals.'" (*Id.,* at p. 627, fn. 13.)

In any event, there is at least one highly significant, specific difference between public and private hospitals bearing directly upon their hearings and adjudications on applications for medical staff membership that, standing alone, justifies treating them differently as to the scope of judicial review. Public hospitals may rationally be subjected to greater judicial scrutiny because they are given subpoena power (Health & Saf. Code, § 32154) and are therefore in a much better position to obtain and present the facts than are private hospitals which do not enjoy subpoena power. (See *Ascherman v. San Francisco Medical Society* (1974) 39 Cal.App.3d 623, 648 [114 Cal.Rptr. 681], quoting from *Silver v. Castle Memorial Hospital* (1972) 53 Hawaii 475, 563 [497 P.2d 564, 571].)

We conclude subdivision (d) of section 1094.5 does not violate the constitutional guarantees of equal protection.

## *Disposition*

The judgment is affirmed.

Morris, P. J., and McDaniel, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 15, 1982.