[No. E001631. Fourth Dist., Div. Two. Jan. 16, 1986.]

ANTHONY D. OLIVER, Plaintiff and Appellant, v.
BOARD OF TRUSTEES OF EISENHOWER MEDICAL CENTER,
Defendant and Respondent.

**COUNSEL**

Beam, DiCaro, D'Antony, Stafford & Brobeck, Daniel R. Sullivan and Timothy J. Stafford for Plaintiff and Appellant.

Weissburg & Aronson, Albert C. Mour, Lloyd A. Bookman and Craig T. Cuden for Defendant and Respondent.

**OPINION**

**KAUFMAN, Acting P. J.**—Anthony D. Oliver, M.D. (petitioner or Dr. Oliver) appeals from a judgment denying his petition for a writ of mandate to compel the Board of Trustees of Eisenhower Medical Center (EMC) to set aside its order denying his application for membership to the Consulting Medical Staff of EMC and to reconsider his application.

*Introduction*

EMC is a private, nonprofit hospital in Coachella Valley. State licensing law vests final authority and responsibility for an acute care hospital such as EMC in the hospital's governing body. (Cal. Admin. Code, tit. 22, § 70035.) Every hospital in California must have an "organized medical staff responsible to the governing body for the adequacy and quality of the medical care rendered to patients in the hospital." (Cal. Admin. Code, tit. 22, § 70703, subd. (a).) The governing body is responsible for the appointment and reappointment of members to the hospital's medical staff (Cal.

Admin. Code, tit. 22, § 70701, subd. (a)(1)(B)) and for assuring that the medical staff establishes controls designed to insure the maintenance of high standards of professional and ethical practices at the hospital (Cal. Admin. Code, tit. 22, § 70701, subd. (a)(7)). The medical staff must establish bylaws which provide formal procedures for "the evaluation of staff applications and credentials, appointments, reappointments, assignment of clinical privileges, appeals mechanisms and such other subjects or conditions which the medical staff and governing body deem appropriate." (Cal. Admin. Code, tit. 22, § 70703, subd. (b).) ▇ While the actions of private hospitals do not constitute "state action" triggering the constitutional guarantees of due process (*Anton* v. *San Antonio Community Hospital* (1982) 132 Cal.App.3d 638, 653-654 [183 Cal.Rptr. 423]), hospitals are required when considering an application for staff membership to afford the applicant certain minimal requirements of "fair procedure." (*Id.;* see also *Ezekial* v. *Winkley* (1977) 20 Cal.3d 267, 278-279 [142 Cal.Rptr. 418, 572 P.2d 32]; *Lewin* v. *St. Joseph Hospital of Orange* (1978) 82 Cal.App.3d 368, 385 [146 Cal.Rptr. 892]; *Ascherman* v. *San Francisco Medical Society* (1974) 39 Cal.App.3d 623, 649 [114 Cal.Rptr. 681].)

There are five categories of medical staff membership at EMC: Active, Associate, Courtesy, Consulting, and Honorary.

The Honorary Staff is comprised of practitioners of outstanding reputation who are not active at EMC or hold emeritus positions.

Members of the Active Staff consist of "physicians, dentists and podiatrists who regularly utilize the hospital facilities, who are located close enough to the hospital to provide continuous care for their patients, who assume all the functions and responsibilities of membership on the Active Medical Staff, including, where appropriate, emergency service care and consultation assignments."

The Associate Staff "is the entry level for applicants who are being considered for advancement to the Active Medical Staff," and members must meet the same basic qualifications as Active Staff members.

The Courtesy Staff consists of "physicians, dentists, and podiatrists qualified for staff membership, but who only occasionally utilize the hospital facilities."

Members of the Active, Associate and Courtesy Staffs have various administrative responsibilities, including service on committees, attendance at medical staff meetings, and payment of annual dues. In addition, these staff members must provide emergency service care. Lastly, members of

these categories of the staff have admitting privileges, and they provide the vast majority of medical services furnished at the hospital.

In contrast, the Consulting Staff is limited to "those physicians, dentists and podiatrists of widely renowned professional ability and reputation in the area of their specialty or whose specialty is not represented on the staff at the time of appointment . . . ." Members of the Consulting Staff "may provide consultative services to other members of the staff." Consulting Staff members, however, do not have admitting privileges, nor are they required to pay medical staff dues or attend staff or departmental meetings.

Petitioner purports to be an expert in neurology, neurosurgery and psychiatry, particularly forensic psychiatry. He practices in Riverside and does not maintain an office in the Coachella Valley. He is on the Active Staff at Riverside Hospital and maintains staff privileges at Parkview Community Hospital in Riverside.

Petitioner applied for Consulting Staff membership at EMC and in due course his application was denied. EMC's internal review of petitioner's application included an investigation by the medical staff credentials committee, a review by the executive committee, a formal hearing before a judicial review committee of five physicians on EMC's medical staff, and appellate review by the board of trustees. Denial of petitioner's application was recommended at each step of the review process. Upon completion of the hospital's review, petitioner challenged the board's decision by filing a petition for writ of mandate in the Superior Court of Riverside County. The trial court conducted a hearing and upheld the board's decision to deny petitioner's application for privileges.

## Contentions on Appeal

On appeal, petitioner raises three principal arguments: (1) EMC did not proceed in the manner required by law because the membership standard applied to Consulting Staff membership is not rationally related to providing high quality medical care; (2) the findings of the board are not supported by substantial evidence on the whole record; and (3) the medical staff did not offer evidence to support the board's findings. Petitioner's contentions are not meritorious.

## Facts

On May 7, 1982, petitioner applied for medical staff membership at EMC. Following a review by the credentials committee, the application was referred to the executive committee for consideration. The executive committee

initially processed the application as one for Associate Staff membership and denied the application because, inter alia, it was determined that petitioner did not satisfy article IV, sections 1.A and 1.B, of the medical staff bylaws (bylaws),[1] which require members of the Associate Staff to limit their practice to the Coachella Valley on a full-time basis.

Petitioner requested and was granted a hearing before the judicial review committee. At the hearing, it became apparent that petitioner intended to apply for consulting rather than Associate Staff membership. The application therefore was remanded to the credentials committee for further recommendation.

Following review and recommendation by the credentials committee, the executive committee recommended denial of petitioner's application for privileges. Petitioner was advised of that recommendation by letter of March 15, 1983, which stated that petitioner had shown: ". . . No evidence of nationally or internationally renowned professional ability and reputation in the area of [his] specialty, and [his] qualifications are not considered unique in that they are already represented on the EMC Medical Staff."

At petitioner's request, and pursuant to the bylaws, a hearing was scheduled before the judicial review committee.[2] On June 21, 1983, the committee met, reviewed the matter, heard oral testimony and argument, and voted unanimously to affirm the executive committee's recommendation. The judicial review committee found, inter alia:

"4. There is no evidentiary support for Dr. Oliver's contention that he has 'widely renowned professional ability and reputation' in the field of Psychiatry. To the extent that Dr. Oliver has any demonstrable renown or reputation, it is as to Forensic Psychiatry and is confined to Riverside County.

"5. There is no Department of Forensic Psychiatry at EMC and it is unlikely that Dr. Oliver's expertise in that field would be of any significant value to Staff Physicians at EMC."

Petitioner then requested review of the judicial review committee's decision by the appellate review committee of the board of trustees. The

---

[1] All bylaw references are to the medical staff bylaws and rules and regulations at Eisenhower Medical Center, approved by the medical staff on March 27, 1979, and by the board of trustees on October 5, 1979.

[2] The judicial review committee is appointed by the executive committee for purposes of conducting a hearing and reviewing the executive committee's recommendation with regard to an application for staff membership or a limitation on staff privileges.

appellate review committee considered the matter and affirmed the judicial review committee's decision. On September 29, 1983, petitioner was advised of the hospital's decision to reject his application for staff membership.

*Discussion*

1. *Rationally Related Standard*

Article IV, section 1, subsection D, of the bylaws of EMC provides in relevant part: "The Consulting Medical Staff shall consist of those physicians, dentists, and podiatrists of widely renowned professional ability and reputation in the area of their specialty or whose specialty is not represented on the staff at the time of appointment . . . ."

In urging that this standard is not rationally related to the hospital's providing high quality medical care, petitioner urges, in essence, that the standard does not relate to physician competence and asserts that all competent physicians must be admitted to the medical staff. For these propositions he cites *Miller* v. *Eisenhower Medical Center* (1980) 27 Cal.3d 614, 631-632 [166 Cal.Rptr. 826, 614 P.2d 258] where, in analyzing a particular requirement for medical staff admission, the court stated in pertinent part: "The bylaw provision here before us, as we have indicated, must be read to preclude the rejection of an otherwise qualified physician from medical staff membership unless it can be shown that he manifests an inability to 'work with others' in the hospital setting which, by reason of its particular character, presents a real and substantial danger that patients treated by him at the facility might receive other than a 'high quality of medical care' if he were admitted to membership." Petitioner asserts in substance that the lack of "widely renowned professional ability and reputation in the area of [one's] specialty" would not pose a "real and substantial danger that patients treated by him . . . might receive other than a 'high quality of medical care'."

For the most part, however, petitioner's reliance on the *Miller* decision is unwarranted. Dr. Miller was an applicant for membership on the Active or Associate Staff at EMC, which would have entitled him to admit and actively treat patients at the hospital.[3] Consulting Staff members, by contrast, may provide only consultative services to other members of the medical staff and do not have admitting privileges.

---

[3]Although the *Miller* opinion is not clear on this point, this court may take and has, after notice to the parties, taken judicial notice of the "PETITION FOR WRIT OF MANDATE" in the *Miller* case (Riverside Superior Court No. Indio 23351), which indicates that Dr. Miller filed an application for membership on either the Active or Associate Staff of EMC.

 The distinction between the Associate or Active Staff and the Consulting Staff is critical. While Associate and Active Staff members admit and are responsible for new patients, Consulting Staff members do not admit patients nor add to the existing population, but simply provide consultative services to members of the medical staff to raise the level of care available to patients admitted by the other physicians. Denial of a physician's application for Associate Staff membership restricts access to the hospital for the physician's patients. Denial of Consulting Staff membership does not restrict patient access to the hospital. It therefore is not essential to make Consulting Staff membership available to *all* competent physicians. The hospital may apply a standard for membership on the Consulting Staff more closely related to the Consulting Staff's function.

When viewed in relationship to the other categories of medical staff membership, the purpose of the Consulting Staff is clear: to permit the hospital, its physicians, and the public to reap the benefit of having resources available from those physicians of exceptional or unique talent who would otherwise be ineligible for staff membership at the hospital and thus be unavailable. The Consulting Staff enhances patient care by making available an educational and clinical resource to the other members of the medical staff which otherwise would not be available and is thus rationally related to providing high quality health care to EMC patients.

The requirement that physicians whose specialties are represented on the staff be "widely renowned" in the area of their specialties furthers the objective of high quality patient care since those physicians will be among the most likely to possess unique and outstanding skills and qualifications. The availability of Consulting Staff membership to physicians whose specialities are not represented on the staff furthers medical staff education and, therefore, improves patient care. The location of EMC makes the availability of Consulting Staff members especially important. Exceptional practitioners are not as numerous in the Coachella Valley as in a metropolitan area. Hence, while membership in the Consulting Staff rarely is extended,[4] it is a necessary category to allow the hospital to attract physicians of exceptional reputation and/or unique skills.

 The standards for Consulting Staff membership satisfy the substantial rationality test enunciated by the California Supreme Court in *Miller*.[5]

---

[4]Only two physicians have been admitted to EMC Consulting Staff membership to date. One is the inventor of the artificial heart valve, who would not have been eligible to membership on the medical staff on any other category.

[5]At oral argument petitioner for the first time urged the standard of "wide renown"

2. *Claimed Failure to Present Evidence and Absence of Substantial Evidence*

 Contrary to fundamental tenets of appellate practice (see *Aceves* v. *Regal Pale Brewing Co.* (1979) 24 Cal.3d 502, 507 [156 Cal.Rptr. 41, 595 P.2d 619]) the facts stated and the inferences drawn in petitioner's appellate briefs are those most favorable to him rather than to EMC. No attempt is made to fairly state all of the evidence as is required. (*Foreman & Clark Corp.* v. *Fallon* (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362]; *Strutt* v. *Ontario Sav. & Loan Assn.* (1972) 28 Cal.App.3d 866, 874 [105 Cal.Rptr. 395], and cases there cited.) Indeed, petitioner is content to make the rather outlandish assertion that no competent evidence was presented against him. Petitioner's briefs constitute merely a challenge to EMC to set forth or this court to find the evidence supporting the hospital's order and the trial court's judgment. Given this type of presentation the contention that the findings are not supported by substantial evidence may be deemed waived. (*Pick* v. *Santa Ana-Tustin Community Hospital* (1982) 130 Cal.App.3d 970, 979 [182 Cal.Rptr. 85], and cases there cited.)

 Happily, EMC has set forth its position and referred to considerable evidence supporting the order denying petitioner's application and the judgment of the trial court. For the benefit of the California Supreme Court in the event it is called upon to consider a petition for review, we include it in this opinion.

The rejection of petitioner's application for staff privileges was based upon recommendations of the credentials committee, the executive committee, and the judicial review committee, all of which indicated that petitioner had failed to meet his burden of proof in satisfying the standard for Consulting Staff membership. In reaching its decision, the board specifically relied upon evidence introduced by the medical staff representative, which indicated that petitioner failed to meet the applicable bylaws standard.

Petitioner's purported areas of expertise are neurology, neurosurgery and psychiatry. However, during the course of review, it became clear that petitioner is not board eligible in either neurosurgery or neurology, and although eligible in psychiatry, he has never become board certified. Hence,

---

provides insufficient guidelines for reasonably uniform application. We reject the suggestion both because it comes too late and because it is incorrect. Petitioner at no time complained of not understanding what was required and we do not find the standard unduly vague or ambiguous.

petitioner has not undertaken to have his knowledge and skill evaluated by his peers, nor has he attempted to be certified as an expert in any specialty.[6]

There is virtually no evidence showing petitioner is of wide renown. Petitioner has no academic affiliation, and he has authored or co-authored only six articles, three of which pertain to neurology and neurosurgery and were published more than 10 years ago. Only three of the articles relate to petitioner's current specialty, psychiatry, and one of the articles is a brief two-page note appearing in Psychiatric News, the "Newspaper of the American Psychiatric Association." This clearly does not demonstrate wide renown in neurology, neurosurgery, or psychiatry, and indicates that petitioner is of no greater renown and accomplishment than many of the physicians in other staff categories who are certified by specialty boards in their fields.

Petitioner points to a variety of administrative appointments to support his position. While those might reflect that petitioner is reputedly competent and even well regarded in the area in which he practices, they do not necessarily support the contention that petitioner is of wide renown or possesses exceptional skills.

Petitioner's background was examined by three members of EMC's medical staff, and none of them found petitioner to be widely renowned in his specialty. Dr. Teicher, a psychiatrist, stated that: "Outside of Riverside [petitioner] is not known. Dr. Oliver is not Board Certified in any specialty and his publications would not warrant appointment beyond assistant clinical professor, despite his experience. In no way does Dr. Oliver qualify for Consulting Medical Staff. He is not widely renowned professionally. He may be a good psychiatrist and expert in forensics—locally."

Dr. Cohen, a neurologist, stated: ". . . I find no evidence to indicate that Dr. Oliver is 'widely renowned' in his professional ability and reputation in any area. I find his self-representation to be pretentious rather than convincingly factual."

Dr. Oygar, a neurosurgeon, indicated: "The numerous enumerations [petitioner] has in his letter do not seem to appropriately correlate with the Bylaws requirement of the Consulting Medical Staff category that he is of widely renowned professional ability and reputation and should be included in the Consulting Staff. The only extensive background of experience that

---

[6]California licensing regulations require that physicians be board certified or board eligible to supervise various hospital services. The regulations therefore explicitly recognize board certification as an indicia of expertise. Examples of such services include: (a) a burn center (Cal. Admin. Code, tit. 22, § 70425); (b) a cardiovascular catheterization laboratory (§ 70435); (c) a coronary care service (§ 70465); and (d) a *psychiatric unit* (§ 70579).

he seems to have is his exposure to a research fellowship for one year. The social appointments which he enumerates . . . do not . . . make him 're-nowned in his field,' to make him eligible to be on the Consulting Staff . . . ."

The opinions of Drs. Teicher, Cohen and Oygar, petitioner's lack of board certification, the paucity of petitioner's publications, his lack of board eligibility in neurology and neurosurgery, and the lack of any significant evidence to demonstrate wide renown constitute substantial evidence in support of the Board's decision. The three memoranda in question were competent evidence, admissible at the judicial review committee hearing. Article VIII, section 3(g) of the bylaws provides in part: "Any relevant evidence shall be admitted by the presiding officer if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the admissibility of such evidence in a court of law." That standard regarding admissibility of evidence has been approved by this court. (See *Pick* v. *Santa Ana-Tustin Community Hospital, supra,* 130 Cal.App.3d at p. 980.) The three memoranda in question are the type of evidence "on which responsible parties are accustomed to rely in the conduct of serious affairs."

■ Although petitioner raises the specter of potential bias by asserting that Drs. Teicher, Cohen and Oygar are "prospective competitors," this contention was apparently not raised at any level during the administrative process and may not be raised for the first time on judicial review. Moreover, the record contains not a shred of evidence to support this assertion; the record is devoid of any evidence demonstrating bias or improper motive on the part of the doctors.

Petitioner provides this court with an enumeration of his accomplishments. However, the issue before this court is not petitioner's accomplishments or competence, but whether there is substantial evidence to support the hospital's findings. Clearly there is. ■ In reviewing for substantial evidence, all reasonable and legitimate inferences must be drawn to uphold the findings of the Board. (*Packer* v. *Board of Medical Examiners* (1974) 37 Cal.App.3d 63 [112 Cal.Rptr. 76].)

■ Finding No. 5 indicates that petitioner's expertise in forensic psychiatry would be of no significant value to staff physicians at EMC. The record clearly demonstrates that petitioner's skills in neurology, neurosurgery and psychiatry already were represented on the staff at EMC. Dr. Williams testified that there was no "case since the opening of this institution which required the services of a forensic psychiatrist." It would make little sense and it is not a proper function of the courts to require the hospital to

extend Consulting Staff privileges to a physician whose medical skills are not needed.

## *Disposition*

The judgment is affirmed.

McDaniel, J., and Rickles, J., concurred.