Filed 12/19/13  Swyak v. Cal. Horse Racing Board CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sacramento)

----

| | |
|---|---|
| ALEXANDER SYWAK, | C072803 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2011-80001021 CU WM GDS) |
| v. | |
| CALIFORNIA HORSE RACING BOARD, | |
| Defendant and Respondent. | |

Defendant California Horse Racing Board (CHRB) suspended plaintiff Alexander Sywak's racehorse trainer license for 30 days and fined him $1,500, after a horse he had entered in a race tested positive for a performance-enhancing drug.  Sywak did not administer the drug but, as a licensed trainer, Sywak is the absolute insurer of the condition of any horse he enters in a race.

We shall affirm the trial court's judgment denying Sywak's petition for writ of administrative mandate.

1

## FACTUAL AND PROCEDURAL BACKGROUND

Sywak was the trainer of the horse "Don'tblocktheshot," which finished third in a race at Golden Gate Fields on November 13, 2010, collecting a purse of $1,230.

Tests after the race disclosed that the horse had Clenbuterol levels of 60 picograms (pg) per milliliter (ml) in its blood and 7.9 nanograms (ng) per ml in its urine, a "Class 3" drug violation, which sets limits of 25 pg/ml (blood) and 5 ng/ml (urine). (Cal. Code Regs., tit. 4, § 1844, subds. (e)(9), (f).)[1]

Alphonso Coyt admitted he put the Clenbuterol in the horse's morning feed on November 9, 2010, without the knowledge or permission of the horse's owner (Jesus Coyt) or Sywak.

The following day, November 10, 2010, Sywak entered the horse for the eighth race at Golden Gate Fields on November 13, 2010.

Sywak took possession of the horse on November 12, 2010.

In the first level of administrative adjudication, the Board of Stewards of the Pacific Racing Association (the Association) charged Sywak with, and found that, he violated Regulations sections 1843, subdivisions (a) (a horse in a race shall not have a prohibited drug in its body) and (d) (a finding of an impermissible drug level shall be prima facie evidence against the trainer), 1844, subdivisions (e)(9) and (f) (setting the permissible limits for Clenbuterol specified above), and 1894 (trainers are responsible for the condition of horses in their care and are presumed to know the rules). Based on these findings, the Association suspended Sywak's license for 30 days and fined him $3,000 pursuant to Regulations section 1887 (the trainer is the absolute insurer of his or her racehorse's condition).

---

[1] Undesignated references to regulations are to title 4 of the California Code of Regulations (Regulations).

Sywak appealed the Association's decision for a de novo review before an administrative law judge (ALJ).  Like the Association, the ALJ found that Sywak violated Regulations sections 1843, subdivisions (a) and (d), 1844, subdivisions (e)(9) and (f), 1894 and 1887.  The ALJ affirmed in part and amended in part the Association's decision, retaining the 30-day license suspension but reducing the fine to $1,500.

The CHRB then adopted the ALJ's decision as its own.

Sywak in turn unsuccessfully petitioned the trial court for a writ of administrative mandate to overturn the CHRB's decision.

This appeal ensued.

## DISCUSSION

Sywak's briefing is difficult to follow.  We will do our best with what has been provided.

### I.  The CHRB Regulations Sywak Violated Were Legally Authorized

Sywak argues he did not violate any equine medication statutes, or any regulations thereunder, because Business and Professions Code section 19581[2] defines the *only* violation involving equine medication, and he did not violate section 19581, as the Clenbuterol was administered *one day before the horse was entered* in the race (the Clenbuterol was administered on Nov. 9, 2010; the horse was entered in the race on Nov. 10).

Section 19581 states, as pertinent, "No substance of any kind shall be administered by any means to a horse *after it has been entered* to race in a horse race, unless the [CHRB] has, by regulation, specifically authorized the use of the substance and the quantity and composition thereof."  (Italics added.)

---

[2] Undesignated statutory references are to the Business and Professions Code.

Sywak posits, rather logically, that if he did not violate section 19581, how could he have violated any regulation based on that statute?

In this argument, Sywak has taken to heart the adage that if the facts are not on your side, argue the law. Unfortunately for Sywak, the law is not on his side either.

Contrary to Sywak's position, section 19581 does *not* define the *only* violation involving equine medication. Section 19580 specifies, "The [CHRB] shall adopt regulations to establish policies, guidelines, and penalties relating to equine medication in order to preserve and enhance the integrity of horse racing in the state. Those policies, guidelines, and penalties shall include, at a minimum, the provisions set forth in this article." (§ 19580, subd. (a), which precedes § 19581 [both are included at div. 8, ch. 4, art. 8.5 under the heading "Equine Medication"].) The regulations Sywak was found to have violated—Regulations sections 1843, subdivisions (a) and (d), 1844, subdivisions (e)(9) and (f), 1887 and 1894—are legally authorized under section 19580.

Furthermore, as the CHRB's decision notes, Sywak was not charged with violating section 19581.

In a related vein, Sywak takes issue with the absolute nature of Regulations section 1887. Section 1887 states the trainer "is the absolute insurer of and responsible for the condition of the horses entered in a race, regardless of the acts of third parties [and] [i]f . . . urine or blood test samples [show] the presence of any prohibited drug substance . . . , the trainer of the horse may be fined, [or] his/her license suspended or revoked . . . ." (Regs., § 1887, subd. (a).) Sywak concedes that Don'tblocktheshot ran the race with a legally impermissible level of Clenbuterol in its system. To ensure the integrity of horse racing and related betting, the absolute nature of this regulation has been deemed necessary for a long time. (See *Sandstrom v. California Horse Racing Bd.* (1948) 31 Cal.2d 401, 409 [discussing Regs., § 1887's predecessor].) Sywak must direct

4

his policy-based objections to this regulation to the appropriate legislative rulemaking bodies, rather than to us.

## II. Sywak Received Due Process

Sywak contends he was denied due process because (1) the CHRB failed to inform him that the state Administrative Procedures Act (the Act) (Gov. Code, § 11340 et seq.) governed the Association's hearing; (2) the CHRB failed to inform him that the Act governed the appeal hearing before the ALJ; and (3) the CHRB failed to provide him with the Association's decision for the ALJ appeal hearing.

As for his first contention, Sywak has forfeited it by failing to object to this alleged deficiency at the Association's hearing. (See Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2013) § 1:44, p. 1-10.1 (rev. #1, 2011).)

As for his parallel second contention, Sywak himself presented evidence that he was informed of the Act's applicability prior to the ALJ appeal hearing.

That leaves Sywak's third contention—the CHRB's failure to provide him with the Association's decision for the ALJ appeal hearing. Sywak is correct that the CHRB improperly failed to provide him this decision. However, the ALJ, at Sywak's request, continued the ALJ appeal hearing for nearly three weeks, in part so Sywak could review this decision and relevant CHRB precedents. Moreover, the record shows Sywak received notice of the Association's decision because he timely appealed that decision to the ALJ.

In related fashion, Sywak complains the ALJ improperly failed to admit into evidence, at the ALJ appeal hearing, the Association's decision. We disagree. The ALJ properly noted this decision was a jurisdictional document rather than an evidentiary one, for purposes of the ALJ hearing. Sywak further complains the CHRB failed to specify its

5

relevant precedents prior to the hearings before the Association and the ALJ. In representing himself, though, Sywak had the task of ascertaining these decisions; the CHRB, as his adversary, was not responsible for making his case.

We conclude that Sywak received due process.

### III. Evidentiary Issues

Sywak raises two evidentiary points.

First, Sywak contends the superior court judge "erred when he agreed with the [CHRB] that [Sywak] was deficient in not being able to recall if he asked about medication administration" regarding Don'tblocktheshot.

This contention essentially asserts there was insufficient evidence to support this finding. But Sywak has forfeited this claim of insufficient evidence because he sets forth in his briefing only the evidence favorable to him, ignoring the unfavorable. (*Oliver v. Board of Trustees* (1986) 181 Cal.App.3d 824, 832.) Furthermore, the actual finding at issue is that Sywak (as he himself admitted at the Association hearing) did not specifically ask the horse owner or the groom about medications, but rather had only a "general discussion" about entering Don'tblocktheshot in the race.

Second, Sywak contends "[t]he [Association], the ALJ and the superior court stressed that [Sywak] was warned by [Steward Darrell] McHargue at a prior informal hearing concerning inadequate work[out]s for a horse entered to race, as to when to bring a horse in prior to a race." Sywak maintains that "[t]hat [prior] hearing had nothing to do with medication issues," and therefore this evidence was irrelevant (and consequently inadmissible). But McHargue explained at the Association hearing here that, regarding this issue of inadequate workouts, "there was a caution placed towards [Sywak] about the travails of allowing a horse to come in and run under his name that may be under somebody else's care, [including] possible medication clearances . . . ." Moreover,

6

Sywak does not set forth pinpoint cites to the record, at which the ALJ (in her de novo hearing) or the superior court supposedly improperly considered this evidence, and forfeits this issue to that extent.[3]  (Cal. Rules of Court, rule 8.204(a)(1)(C).)

## DISPOSITION

The judgment is affirmed.  The CHRB is awarded its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)


      BUTZ      , J.


We concur:


    NICHOLSON   , Acting P. J.


    HULL    , J.

---

[3] Sywak lastly contends he "was not totally at blame for incorrectly formatting the petition and administrative record filing."  Any such formatting has not affected our review of this case.